TODD F. STEVENS (SBN 137842)
MARY M. BEST (SBN 110220)
**KEENEY WAITE & STEVENS**
A Professional Corporation
402 West Broadway, Suite 1820
San Diego, CA 92101
Telephone:    (619) 238-1661
Facsimile:    (619) 231-1897

Attorneys for Defendant CHASE BANK USA, N.A.
(INCORRECTLY NAMED AS JPMORGAN CHASE BANK, INC.)

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL G. DOAN,<br><br>Plaintiff,<br><br>v.<br><br>JPMORGAN CHASE BANK, INC. AND DOES 1 THROUGH 10,<br><br>Defendants. | Case No. 08 CV 0031 LAB BLM<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL ARBITRATION**<br><br>Date:       April 14, 2008<br>Time:       11:15 a.m.<br>Courtroom: 9<br><br>Judge:     The Hon. Larry A. Burns<br>Trial:       None Set |

Petitioner, Chase Bank USA, N.A. ("Chase"), respectfully submits the following memorandum of points and authorities in support of its motion to compel arbitration:

## I.

## INTRODUCTION

Plaintiff and Chase entered into an arbitration agreement at the time Plaintiff obtained a credit card issued by Chase (the "Account"). The claims asserted by Plaintiff in this litigation all arise out of transactions on the Account. Therefore, this action is subject to adjudication by arbitration and Chase seeks an order of this court compelling arbitration.

/ / /

/ / /

/ / /

## II.

### AN ARBITRATION AGREEMENT EXISTS BETWEEN PLAINTIFF AND CHASE

As detailed in the declaration of Donna Barrett, Plaintiff contractually agreed to arbitration when he obtained the Account with Chase. The operative arbitration agreement is attached to the Barrett Declaration as Exhibit "D". The arbitration clause states, in pertinent part:

> Claims Covered. Either you or we may, without the other's consent, elect mandatory, binding arbitration of any claim, dispute or controversy by either you or us against the other . . . arising from or relating in any way to the Cardmember Agreement, any prior cardmember agreement, your credit card account . . . . This Arbitration Agreement governs all Claims whether such Claims are based on law, statute, contract, regulation, ordinance, tort, common law, constitutional provision, or any legal theory of law . . . . As used in this Arbitration Agreement, the term Claim is to be given the broadest possible meaning.

All of the claims asserted in Plaintiff's complaint arise out of transactions on the Account. See, Plaintiff's complaint, ¶¶ 19-30. As such, all claims are arbitable and subject to arbitration pursuant to the parties' agreement.

Because Chase is located in Delaware and Plaintiff is located in California, the Cardmember Agreement between them was made in interstate commerce. The Federal Arbitration Act (the "FAA"), 9 U.S.C. §1 et seq. provides that "[a] written provision . . . in a contract evidencing a transaction involving commerce to settle by arbitration an existing controversy arising out of such a contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.*, §2. *Southland v. Keating* (1984) 465 U.S. 1, 10 held not only that the FAA governed arbitration agreements made in interstate commerce but also that it prohibited a state from "requir[ing] a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration."

Federal law should thus be applied by virtue of the preemptive effect of the FAA. Federal law also governs enforcement and interpretation of the subject credit card agreement by virtue of the choice of law provisions in them, which specify federal law and Delaware law.

Section 3 of the FAA, 9 U.S.C. §3 provides that a court hearing an action arbitrable under an agreement governed by the FAA "shall on application of one of the parties, stay the trial of the

2

1 | action until such arbitration has been had in accordance with the terms of the agreement, providing
2 | the applicant for stay is not in default in proceeding with such arbitration."

3 |      Federal law strongly favors enforcement of agreements requiring arbitration. Congress
4 | enacted the FAA for the purpose of "'revers[ing] the longstanding judicial hostility to arbitration
5 | agreements . . . and to place arbitration agreements upon the same footing as other contracts.'"
6 | *Green Tree Financial Corp.-Alabama v. Randolph* (2000) 531 U.S. 79 [quoting *Gilmer v.*
7 | *Interstate/Johnson Lane Corp.* (1991) 500 U.S. 20, 24]. As the Supreme Court has emphasized, the
8 | FAA embodies a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Memorial*
9 | *Hospital v. Mercury Construction Corp.* (1983) 460 U.S. 1, 24. The FAA not only places arbitration
10 | agreements on equal footing with other contracts, but also establishes a federal policy in favor of
11 | arbitration. *Circuit City Stores, Inc. v. Adams* (9th Cir. 2002) 279 F.3d 889, 892. Thus, any doubts
12 | concerning the scope of arbitrable issues should be resolved in favor of arbitration "whether the
13 | problem at hand is the construction of the contract language itself or an allegation of waiver, delay,
14 | or a like defense to arbitrability." *Id.* at 25.

15 |      The Federal policy favoring arbitration has proved to have many advantages for consumers.
16 | See e.g., *Allied-Bruce Terminix Companies, Inc. v. Dobson* (1995) 513 U.S. 265, 280 ["'The
17 | advantages of arbitration are many: it is usually cheaper and faster than litigation; it can have simpler
18 | procedural and evidentiary rules; . . . it is often more flexible in regard to scheduling of times and
19 | places of hearings and discovery devices. . . .'" (quoting H.R. Rep. No. 97-542 (1982), p. 13)]; *Olde*
20 | *Discount Corp. v. Tugman* (D.Del. 1992) 805 F.Supp. 1130, 1142 [arbitration allows the parties "to
21 | avoid the costliness and delays of litigation"; (citing *Scherk v. Alberto-Culver Co.* (1974) 417 U.S.
22 | 506, 510-11)]; *Recognition Equipment, Inc. v. NCR Corp.* (N.D.Tex. 1981) 532 F.Supp. 271, 275
23 | ["the purposes of arbitration under the Federal Arbitration Act are to facilitate and expedite the
24 | resolution of disputes, ease court congestion, and provide disputants with a less costly alternative to
25 | litigation"].

26 |      Likewise, Delaware law strongly favors enforcement of agreements requiring arbitration.
27 | The Delaware Supreme Court has declared, unequivocally, that "the public policy of this state favors
28 | the resolution of disputes through arbitration." *Graham v. State Farm Mutual Auto Insurance Co.*

1  (Del. 1989) 565 A.2d 908, 911; see also, *SBC Interactive, Inc. v. Corporate Media Partners* (Del.

2  1998) 714 A.2d 758, 761.[1/]

3  ### III.

4  ### ARBITRATION SHOULD BE COMPELLED

5  In ruling on a petition to compel arbitration, the court may inquire only as to whether:

6  •    there is an agreement to arbitrate;

7  •    there are arbitratable claims; and

8  •    if there has been a waiver of the right to arbitrate by the moving party.

9  *Chiron Corp. v. Ortho Diagnostic Systems, Inc.* (9th Cir. 2000) 207 F.3d 1126, 1130.

10  In the present case, there is an agreement to arbitrate.  See, Exhibit D to the Barrett

11  Declaration.  Plaintiff's claims are <u>all</u> arbitable as they all stem from transactions occurring on

12  Plaintiff's Account -- clearly within the ambit of the arbitration clause.  See, Exhibit D to the Barrett

13  Declaration.

14  This petition represents Chase's first appearance in this litigation and therefore there has

15  been no waiver of the right to compel arbitration.  In fact, prior to filing this petition, Chase

16  requested that Plaintiff abide by the terms of the arbitration agreement and submit this controversy to

17  arbitration.  See, Declaration of Todd F. Stevens.

18  In determining the validity of an agreement to arbitrate, federal courts must apply ordinary

19  state law principles that govern the formation of contracts. *Adams, supra,* 279 F.3d at 892.  Whether

20  California law or Delaware law is applied to determine if a contract has been formed between Chase

21  and Plaintiff, the result is the same: a valid, enforceable contract has been formed, the Cardmember

22  Agreement, and the Arbitration Section is enforceable as an amendment to the Credit Card

23  Agreement.

24

25

26

27  [1/] The Federal Arbitration Act controls here and requires arbitration.  We mention Delaware law, which is the State law that generally governs the Account, only to show that there is no inconsistency.  California law is also consistent in requiring the enforcement of arbitration agreements (see California Code of Civil Procedure Section 1280 et seq.) but it

28  is in any event not applicable here.  The parties have chosen Delaware law (see Barrett Declaration, Exhibit "D") and that choice is binding. *Washington Mutual Bank, F.A. v. Superior Court (Briseno)* (2001) 24 Cal.4th 906, 915-18.

1

  **A. Enforceability Under Delaware Law**

2    The Credit Card Agreement states that it is governed by Delaware law. Barrett Declaration,

3 ¶6. Under California law, such choice of law provision is enforceable, even if it appears in a

4 contract of adhesion. *Washington Mutual Bank, F.A. v. Superior Court (Briseno)* (2001) 24 Cal. 4th

5 906, 915-18. In *Discover Bank v. Superior Court* (Dec. 7, 2005) 134 Cal.App.4th 886, the court

6 considered a dispute between a Delaware bank and a credit card holder in California. The court

7 enforced a choice of law provision specifying that the applicable law was that of Delaware and the

8 United States. The trial court was instructed to reinstate its original order that the dispute be

9 arbitrated, despite the fact that the arbitration agreement contained a class action waiver, which the

10 court held to be unconscionable under California law, but not under Delaware law. The fact that the

11 bank was located in Delaware provided a reasonable basis for enforcement of the choice of law

12 clause. As *Discover* compels, the choice of law provisions in the Credit Card Agreements must be

13 enforced.

14    The arbitration provision at issue in this case was added by amendment. Title 5 of the

15 Delaware Code, §952, specifically provides for the amendment of the Credit Card Agreements to

16 include an arbitration provision:

17    §952. Amendment of Agreement:

18    (a) Unless the agreement governing a revolving credit plan otherwise
    provides, **a bank may at any time and from time to time amend**
19    **such agreement in any respect,** whether or not the amendment or the
    subject of the amendment was originally contemplated or addressed by
20    the parties or is integral to the relationship between the parties.
    Without limiting the foregoing, such amendment may change terms by
21    the addition of new terms or by the deletion or modification of existing
    terms, whether relating to plan benefits or features, the rate or rates of
22    periodic interest, the manner of calculating periodic interest or
    outstanding unpaid indebtedness, variable schedules or formulas,
23    interest charges, fees, collateral requirements, methods for obtaining or
    repaying extensions of credit, attorney's fees, plan termination, the
24    manner for amending the terms of the agreement, **arbitration** or other
    alternative dispute resolution mechanisms … Any amendment that
25    does not increase the rate or rates of periodic interest charged by a
    bank to a borrower under § 943 or § 944 of this title may become
26    effective as determined by the bank, subject to compliance by the bank
    with any applicable notice requirements under the Truth in Lending
27    Act (15 U.S.C. §§ 1601, et seq.), and the regulations promulgated
    thereunder, as in effect from time to time. Any notice of an
28    amendment sent by the bank may be included in the same envelope

1    with a periodic statement or as part of the periodic statement or in
2    other materials sent to the borrower.

3  Emphasis added.

4       The amendment of the Cardmember Agreement adding the present Arbitration Section

5  conformed to Delaware law and is enforceable thereunder.  In fact, the amendment of a credit card

6  agreement exactly as done by Chase adding the identical arbitration provision was held valid in

7  *Edelist v. Chase Am. Bank* (Del. Super. Ct. 2001) 790 A.2d 1249, 1253-54.

8       **B.     Enforceability Under California Law.**

9       Even if California law governs the enforceability of the arbitration provision (which Chase

10  denies), the arbitration provision is also enforceable under California law.  The Cardmember

11  Agreement was sent to Plaintiff.  By accepting the credit card, Plaintiff agreed to the terms and

12  provisions in the Cardmember Agreement.  Under California law, where a writing appears on its

13  face to be an offer or proposed contract and is delivered by one party to the other, the receipt by the

14  other of the contract and the acceptance of the benefits and rights stated therein will constitute a

15  manifestation of acceptance.  *Marin Storage & Trucking v. Benco Contracting Engineering* (2002)

16  89 Cal.App.4th 1042, 1049; *see, generally*, I Witkin, Summary of Cal. Law (9th ed.) Contracts, §121.

17  Plaintiff in fact alleges in the complaint that he made charges and payments on the Account, thus

18  admitting that he used the Account. Complaint, ¶¶21 and 23.

19       "The existence of mutual assent is determined by objective criteria, not the parties subjective

20  intent.  The test is whether a reasonable person would from the conduct of the parties conclude that

21  there was a mutual agreement." *Marin Storage & Trucking, Inc.*, *supra*, at 1050.  "A voluntary

22  acceptance of the benefit of a transaction is a consent to all the obligations arising from it, so far as

23  the facts are known, or ought to be known to the person accepting." Cal. Civ. Code §1589.

24       The Cardmember Agreement also provides that it may be amended by Chase and that

25  amendments to them become part of the contract between Plaintiff and Chase.  Barrett Declaration,

26  ¶5.  Plaintiff accepted the benefits of the Credit Card Agreement as amended voluntarily and is

27  bound by the obligations arising from the amendments, including the Arbitration Section.  As noted

28  above, under California law, where a writing appears to be an offer and is delivered by one party to

1    another, acceptance of the benefits and rights stated therein will constitute manifestation of

2    acceptance. *Marin Storage & Trucking, supra*; *Durgin v. Kaplan, supra*. There was activity on the

3    Account after the amendment, and Plaintiff is thus bound by the amendment. California, moreover,

4    has its own strong policy in favor of enforcing arbitration agreements. *Madden v. Kaiser*

5    *Foundation Hospitals* (1976) 17 Cal.3d 699, 706-707. No public policy of California would be

6    offended by enforcement of the arbitration provision.

7        **C.**     **Plaintiff's Arguments In Refusing To Arbitrate Are Unpersuasive.**

8        Plaintiff's counsel responded to Chase's arbitration request with an e-mail refusing to submit

9    this case to arbitration. A copy of the e-mail is attached to the Declaration of Todd F. Stevens as

10    Exhibit F.

11        None of the arguments raised by Plaintiff's counsel opposing arbitration possess any merit.

12    Federal statutory claims can be resolved through arbitration. *Rodriguez de Quijas v.*

13    *Shearson/American Express, Inc.* (1989) 490 U.S. 477. The case law in this area is clear: claims

14    arising under a statute designed to further important social policies may be arbitrated so long as the

15    prospective litigant may vindicate a statutory claim in the arbitral forum. *Mitsubishi Motors Corp. v.*

16    *Soler Chrysler-Plymouth, Inc.* (1985) 473 U.S. 614.

17        Federal law favors the arbitration of commercial disputes. *Shearson/American Express, Inc.*

18    *v. McMahon* (1987) 482 U.S. 220, 226. Any doubt concerning the scope of arbitrable issues is

19    resolved in favor of arbitration. *Chiron Corp. v. Ortho Diagnostic Systems, Inc., supra,* 207 F.3d

20    at 1131.

21        Accordingly, the matter should be submitted to arbitration.

22                                           **IV.**

23                             **CONCLUSION**

24        Chase respectfully requests that this court grant its petition and order this matter to

25    arbitration.

26    Dated: March 4, 2008            KEENEY WAITE & STEVENS

27                               By: _____

                                       Todd F. Stevens

28                                        Attorneys for Defendant
                                       Chase BANK USA, N.A