1  TODD F. STEVENS (SBN 137842)
   MARY M. BEST (SBN 110220)
2  **KEENEY WAITE & STEVENS**
   A Professional Corporation
3  402 West Broadway, Suite 1820
   San Diego, CA 92101
4  Telephone:    (619) 238-1661
   Facsimile:    (619) 231-1897
5
6  Attorneys for Defendant CHASE BANK USA, N.A.
   (incorrectly named herein as JPMORGAN CHASE BANK, INC.)
7
8
9                **UNITED STATES DISTRICT COURT**
10              **SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 11  MICHAEL G. DOAN, | Case No. 08 CV 0031 LAB BLM |
| 12            Plaintiff, | DECLARATION IN SUPPORT OF CHASE BANK USA N.A.'s MOTION TO |
| 13  v. | COMPEL ARBITRATION |
| 14  JPMORGAN CHASE BANK, INC. AND DOES 1 THROUGH 10, | Date:        April 14, 2008 |
| 15 | Time:        11:15 a.m. Courtroom: 9 |
| 16            Defendants. | Judge:      The Hon. Larry A. Burns |
| 17 | Trial:        None Set |

18        I, DONNA BARRETT, declare as follows:

19        1.    I am over the age of 18, and am competent to make this declaration. I am the General

20  Manager of the Card Business Unit of Chase Bank USA, N.A. ("Chase"). I have personal knowledge of the

21  matters set forth herein, or the facts set forth herein are based upon my review of the business records of

22  Chase, which records were made by, or from information transmitted by, a person with knowledge of the

23  event described therein, at or near the time of the event described, and are kept in the ordinary course of the

24  regularly conducted business activity of such person and Chase, and it is the regular practice of that business

25  activity to make such records.

26        2.    JPMorgan Chase & Co. is a bank holding company. Chase is one of JPMorgan Chase &

27  Co.'s subsidiary banks. Chase is a national bank chartered under the laws of the United States of America

28  with its headquarters in Newark, Delaware. Chase enters into credit card contracts with consumers, issues

1    credit cards to consumers, extends credit to those consumers pursuant to a contract, and is entitled to

2    payments pursuant to that contract.

3        3.    I have reviewed and am familiar with the records of Chase relating to the Chase credit card

4    account issued to Plaintiff, Michael G. Doan.  On or about January 13, 2002, Plaintiff  was issued a credit

5    card ending in account number 5398 (the "Account").  The account number changed to one ending in 9674

6    when the Account was upgraded in October 2003.

7        4.    Along with the credit card, Chase mailed to Plaintiff a Cardmember Agreement (the

8    "Cardmember Agreement").  A sample copy of the Cardmember Agreement is attached as Exhibit A.  The

9    Cardmember Agreement established the terms of the Account.

10       5.    The Cardmember Agreement contains a provision providing that the Cardmember Agreement

11   could be amended.  See Cardmember Agreement § 23.

12       6.    The Cardmember Agreement also states that it is governed by the laws

13   of the United States and the State of Delaware.  See Cardmember Agreement § 26.

14       7.    The Cardmember Agreement also contains an arbitration provision which states in pertinent

15   part:

16       **"ARBITRATION AGREEMENT**

17       IT IS IMPORTANT THAT YOU READ THIS
     ARBITRATION AGREEMENT CAREFULLY.  IT PROVIDES
18   THAT YOU MAY BE REQUIRED TO SETTLE A CLAIM OR
     DISPUTE THAT IS COVERED BY THIS ARBITRATION
19   AGREEMENT THROUGH ARBITRATION, EVEN IF YOU
     WOULD PREFER TO LITIGATE THE CLAIM IN A COURT.
20   YOU ARE GIVING UP RIGHTS YOU MIGHT HAVE TO
     LITIGATE SUCH CLAIMS IN A COURT OR BEFORE A JURY
21   OR TO PARTICIPATE IN A CLASS ACTION LAWSUIT OR
     OTHER REPRESENTATIVE ACTION WITH RESPECT TO SUCH
22   A CLAIM.  OTHER RIGHTS THAT YOU WOULD HAVE IF YOU
     WENT TO COURT SUCH AS DISCOVERY OR THE RIGHT TO
23   APPEAL THE DECISION, MAY NOT BE AVAILABLE IN
     ARBITRATION OR MAY BE MORE LIMITED. CERTAIN
24   CLAIMS BY EITHER OF US AGAINST THE OTHER SEEKING
     UP TO $25,000, EXCLUDING INTEREST, COSTS AND FEES,
25   MAY BE RESOLVED BY LITIGATION AND NOT
     ARBITRATION.

26

27       **1.**    **Binding Arbitration.** This Arbitration Agreement is made
     pursuant to a transaction involving interstate commerce, and shall be
28   governed by and be enforceable under the Federal Arbitration Act (the
     "FAA"), 9 U.S.C. §1-16 as it may be amended. This Arbitration

2

1    Agreement sets forth the circumstances and procedures under which
2    claims (as defined below) may be resolved by arbitration instead of
     being litigated in court.

3    **2.    Claims Covered.** Any claim or dispute ("Claim", which term
     may refer to more than one claim as is appropriate for the context in
4    which it is used) by either you or us against the other, or against the
     employees, agents, or assigns of the other arising from or relating in
5    any way to the Cardmember Agreement, any prior Cardmember
     Agreement, your credit card Account or the advertising, application or
6    approval of your Account, will, at the election of either you or us, be
     resolved by binding arbitration. This Arbitration Agreement governs
7    all Claims, whether such Claims are based on law, statute, contract,
     regulation, ordinance, tort, common law, constitutional provision, or
8    any legal theory of law such as respondent superior, or any other legal
     or equitable ground and whether such Claims seek as remedies money
9    damages, penalties, injunctions, or declaratory or equitable relief.
     Claims subject to this Arbitration Agreement include Claims regarding
10   the applicability of this Arbitration Agreement or the validity of the
     entire Cardmember Agreement or any prior Cardmember Agreement.
11   As used in this Arbitration Agreement, the term "Claim" is to be given
     the broadest possible meaning.  Notwithstanding the foregoing, a
12   Claim may be resolved by litigation and is not subject to arbitration
     under this Arbitration Agreement if (1) the only remedy that will be
13   sought by either of the parties is monetary damages; (2) neither party
     will seek a recovery in excess of $25,000, excluding interest, costs and
14   fees; and (3) the only parties to the litigation will be you and us. If one
     party wants a Claim to be resolved by arbitration, but the other party
15   believes the Claim may be litigated subject to this small claims
     exception, the party seeking arbitration may require reasonable
16   assurance from the other party that the conditions are true and that the
     party wishing to resolve the Claim by litigation will take no action
17   now or in the future to change the nature of the Claim so that it would
     no longer meet the conditions of this small claims exception. If such
18   reasonable assurance is not provided, the party seeking such assurance
     may require the Claim to be resolved by arbitration.

19
          As used in this Arbitration Agreement, the term "Claims"
20   includes claims that arose in the past, or arise in the present or the
     future. If a party elects to arbitrate a Claim, the arbitration will be
21   conducted as an individual action. The only Claims that may be joined
     in an individual action under this Arbitration Agreement are (1) those
22   brought by us against you and any co-applicant, joint cardmember, or
     authorized user of your Account, or your heirs or your trustee in
23   bankruptcy or (2) those brought by you and any co-applicant, joint
     cardmember, or authorized user of your Account, or your heir or your
24   trustee in bankruptcy against us. This means that even if a class action
     lawsuit or other representative action, such as those in the form of a
25   private attorney general action, is filed, any Claim between us related
     to the issues raised in such lawsuits will be subject to arbitration if you
26   or we so elect. Claims subject to arbitration include Claims that are
     made as counterclaims, cross-claims, third-party claims, interpleaders
27   or otherwise, and a party who initiates a proceeding in court may elect
     arbitration with respect to any such Claims advanced in the lawsuit by
28   any party or parties.

1     For the purposes of this Arbitration Agreement, "we" and "us"
means Chase Manhattan Bank USA, N.A., its parent, subsidiaries,
2     affiliates, licensees, predecessors, successors, assigns, any purchaser of
your Account, and all of their officers, directors, employees, agents,
3     and assigns or any and all of them. Additionally, "we" or "us" shall
mean any third party providing benefits, services, or products in
4     connection with the Account (including but not limited to credit
bureaus, merchants that accept any credit card device issued under the
5     Account, rewards programs and enrollment services, credit insurance
companies, debt collectors, and all of their officers, directors,
6     employees, agents and representatives) if, any only if, such a third
party is named by you as a co-defendant in any Claim you assert
7     against us.

8     **3.    Initiation of Arbitration.**  The party filing an arbitration must
choose one of the following three arbitration administrators: American
9     Arbitration Association; JAMS; or National Arbitration Forum.
However, if we elect an administrator, you will have ten days after
10    receiving notice of our election to request that the arbitration be
conducted pursuant to rules of one of the other two arbitration
11    administrators. To exercise your choice, you must notify us of your
choice by writing us at P.O. Box 15933, Wilmington, DE 19850-5933.
12    Send us a copy of the notice you received and state which of the other
two arbitration administrators you choose. These administrators are
13    independent from us. The administrator does not conduct the
arbitration. Arbitration is conducted under the rules of the selected
14    administrator by an impartial third party chosen in accordance with
this Arbitration Agreement and rules of the selected administrator.
15    Any arbitration hearing that you attend shall be held at a place chosen
by the arbitrator or arbitration administrator within the federal judicial
16    district in which you reside at the time the Claim is filed, or at some
other place to which you and we agree in writing. You may obtain
17    copies of the current rules of each of the three arbitration
administrators, information about arbitration and arbitration fees, and
18    instructions for initiating by contacting the arbitration administrators.

19

20    American Arbitration Association
335 Madison Avenue, Floor 10
21    New York, NY 10017-4605
Web site: www.adr.org
22    800-778-7879

23    JAMS
1920 Main Street, Suite 300
24    Irvine, CA 92610
Web site: www.jamsadr.com
25    800-352-5267

26    National Arbitration Forum
P.O. Box 50191
27    Minneapolis, MN 55405
Web site: www.arbitration-forum.com
28    800-474-2371

**4.     Procedures and law applicable in arbitration.** A single, neutral arbitrator will resolve Claims. The arbitrator will either be a lawyer with a least ten years experience or a retired or former judge. The arbitrator will be selected in accordance with the rules of the arbitration administrator. The arbitration will be conducted under the applicable procedures and rules of the arbitration administrator that are in effect on the date the arbitration is filed unless those procedures and rules are inconsistent with this Arbitration Agreement, in which case this Agreement will prevail. These procedures and rules may limit the amount of discovery available to you or us. The arbitrator will apply applicable substantive law consistent with the FAA and applicable statutes of limitations, and will honor claims of privilege recognized by law. You may choose to have a hearing and be represented by counsel. The arbitrator will take reasonable steps to protect customer Account information and other confidential information, including the use of protective orders to prohibit disclosure outside the arbitration, if requested to do so by you or us. The arbitrator will have the power to award to a party any damages or other relief provided for under applicable law, and will not have the power to award relief to, against, or for the benefit of any person who is not a party to the proceeding. The arbitrator may award punitive damages or attorney fees, if such damages are authorized by law. The arbitrator will make any award in writing but need not provide a statement of reasons unless requested by a party. Upon a request by you or us, the arbitrator will provide a brief statement of the reasons for the award.

**5.     Costs.** At your written request, we will advance any reasonable arbitration filing fee, or administrative and hearing fees that you are required to pay to pursue a Claim in arbitration up to the amount of $500. We will reimburse you for the initial fee if you paid it and you prevail on your Claim. If there is a hearing, we will pay any fees of the arbitrator and arbitration administrator for the first two days of that hearing. All other fees will be allocated in keeping with the rules of the arbitration administrator and applicable law. However, we will advance or reimburse filing fees and other fees if the arbitration administrator or arbitrator determines there is a good reason for requiring us to do so or you ask us and we determine there is a good cause for doing so. Each party will bear the expense of the fees and costs of that party's attorneys, experts, witnesses, documents and other expenses, regardless of which party prevails, for arbitration and any appeal (as permitted below), except that the arbitrator shall apply any applicable law in determining whether a party should recover any or all fees and costs from another party.

**6.     Enforcement, finality, appeals.** You or we may bring an action including a summary or expedited motion to compel arbitration of Claims subject to arbitration, or to stay the litigation of any Claims pending arbitration, in any court having jurisdiction. Such action may be brought at any time, even if any such Claims are part of a lawsuit. Failure or forbearance to enforce this Arbitration Agreement at any particular time, or in connection with any particular Claims, will not constitute a waiver of any rights to require arbitration at a later time or in connection with any other Claims. Any additional or different agreement between you and us regarding arbitration must be in writing. The arbitrator's decision will be final and binding, except for any right of appeal under the FAA. In addition, the non-prevailing

5

1    party may appeal any award that exceeds $100,000 or that includes an
     award of punitive damages. Any request for any appeal must be filed
2    in writing with the same arbitration administrator within 30 days of the
     receipt by the non-prevailing party of notice of the original award.
3    The appeal shall be heard before a panel of three neutral arbitrators
     designated by the same arbitration administrator. The panel will
4    consider all factual and legal issues anew, follow the same rules that
     apply to a proceeding using a single arbitrator, and make decisions
5    based on the majority vote. The cost of the appeal imposed by the
     arbitration administrator shall be borne by the appealing party. An
6    award in arbitration will be enforceable as provided by the FAA or
     other applicable law by any court having jurisdiction.

7
     **7.    Severability, survival.** This Arbitration Agreement shall
8    survive: (i) termination or changes in the Cardmember Agreement, the
     Account and the relationship between you and us concerning the
9    Account, such as the issuing of a new account number or the
     transferring or the balance in the Account to another account; (ii) the
10   bankruptcy of any party; and (iii) any transfer, sale, or assignment of
     your Account, or any amounts owed on your Account, to any other
11   person. If any portion of this Arbitration Agreement is deemed invalid
     or unenforceable, the remaining portions shall nevertheless remain in
12   force."

13   See Cardmember Agreement § entitled ARBITRATION AGREEMENT.

14       8.    Plaintiff used the Account. Thus, Plaintiff agreed to the terms of the Cardmember

15   Agreement.

16       9.    In March 2003, Chase mailed to Plaintiff a billing statement which included an

17   amendment to the Agreement ("Amendment"). A copy of the Amendment and the March 26, 2003

18   monthly billing statement are attached hereto as Exhibits B and C, respectively. The Amendment

19   states in pertinent part:

20       **"The following changes will apply automatically to your Account.**

21       • **Arbitration**. Section 5 entitled "Costs" in the Arbitration portion of
         your Agreement will be amended to clarify the costs that will be paid
22       or advanced in connection with any arbitration hearing involving your
         Account. That section will be as follows:
23
         **5. Costs**. We will reimburse you for the initial arbitration filing fee
24       paid by you up to the amount of $500 upon receipt of proof of
         payment. Additionally, if there is a hearing, we will pay for any fees of
25       the arbitrator and arbitration administrator for the first two days of that
         hearing. The payment of any such hearing fees by us will be made
26       directly to the arbitration administrator selected by you or us pursuant
         to this Arbitration Agreement. All other fees will be allocated in
27       keeping with the rules of the arbitration administrator and applicable
         law. However, we will advance or reimburse filing fees and other fees
28       if the arbitration administrator or arbitrator determines there is good
         reason for requiring us to do so or you ask and we determine there is

                                          6
     DECLARATION IN SUPPORT OF CHASE BANK USA, N.A.'s MOTION TO COMPEL ARBITRATION
                                                                    08 CV 0031 LAB BLM

1
2
3
4

> good cause for doing so. Each party will bear the expense of the fees and costs of that party's attorneys, experts, witnesses, documents and other expenses, regardless of which party prevails, for arbitration and any appeal (as permitted below), except that the arbitrator shall apply any applicable law in determining whether a party should recover any or all fees and costs from another party."

See Amendment § entitled "the following changes will automatically apply to your Account".

5
6
7

    10.    Plaintiff continued to use the Account. Further, Chase's records do not indicate that Chase

8 received any returned mail indicating that the billing statement or the Amendment was returned as

9 undeliverable by the postal service. Thus, Plaintiff continued to agree to the Arbitration Provision, as

10 amended.

11     11.    In October 2004, Chase mailed to the Plaintiff at the address on file for the Account a revised

12 Cardmember Agreement ("Revised Agreement"). The Revised Agreement contained language pertinent to

13 Arbitration. A copy of the Revised Agreement is attached as Exhibit D. The Revised Agreement states in

14 pertinent part:

15 ### "8. ARBITRATION AGREEMENT

16
17
18
19
20
21
22
23
24
25
26
27

> PLEASE READ THIS AGREEMENT CAREFULLY. IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT. YOU WILL NOT BE ABLE TO BRING A CLASS ACTION OR OTHER REPRESENTATIVE ACTION IN COURT SUCH AS THAT IN THE FORM OF A PRIVATE ATTORNEY GENERAL ACTION, NOR WILL YOU BE ABLE TO BRING ANY CLAIM IN ARBITRATION AS A CLASS ACTION OR OTHER REPRESENTATIVE ACTION. YOU WILL NOT BE ABLE TO BE PART OF ANY CLASS ACTION OR OTHER REPRESENTATIVE ACTION BROUGHT BY ANYONE ELSE, OR BE REPRESENTED IN A CLASS ACTION OR OTHER REPRESENTATIVE ACTION. IN THE ABSENCE OF THIS ARBITRATION AGREEMENT, YOU AND WE MAY OTHERWISE HAVE HAD A RIGHT OR OPPORTUNITY TO BRING CLAIMS IN A COURT, BEFORE A JUDGE OR JURY, AND/OR TO PARTICIPATE OR BE REPRESENTED IN A CASE FILED IN COURT BY OTHERS (INCLUDING CLASS ACTIONS AND OTHER REPRESENTATIVE ACTIONS). OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO A COURT, SUCH AS DISCOVERY OR THE RIGHT TO APPEAL THE DECISION MAY BE MORE LIMITED. EXCEPT AS OTHERWISE PROVIDED BELOW, THOSE RIGHTS ARE WAIVED.

28

> **Binding Arbitration.** This Arbitration Agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by

7

1  and be enforceable under the Federal Arbitration Act (the "FAA"), 9
U.S.C. §1-16 as it may be amended. This Arbitration Agreement sets
2  forth the circumstances and procedures under which claims (as defined
below) may be resolved by arbitration instead of being litigated in
3  court.

4  Parties Covered. For the purposes of this Arbitration Agreement, "we" and
"us" means Chase Manhattan Bank USA, N.A., its parent, subsidiaries,
5  affiliates, licensees, predecessors, successors, assigns, any purchaser of your
Account, and all of their officers, directors, employees, agents, and assigns or
6  any and all of them. Additionally, "we" or "us" shall mean any third party
providing benefits, services, or products in connection with the Account
7  (including but not limited to credit bureaus, merchants that accept any credit
device issued under the Account, rewards programs and enrollment services,
8  credit insurance companies, debt collectors, and all of their officers,
directors, employees, agents and representatives) if, and only if, such a third
9  party is named by you as a co-defendant in any Claim you assert against us.

10  Claims Covered. Either you or we may, without the other's consent,
elect mandatory, binding arbitration of any claim, dispute or
11  controversy by either you or us against the other, or against the
employees, parents, subsidiaries, affiliates, beneficiaries, agents or
12  assigns of the other, arising from or relating in any way to the
Cardmember Agreement, any prior Cardmember Agreement, your
13  credit card Account or the advertising, application or approval of your
Account ("Claim"). This Arbitration Agreement governs all Claims,
14  whether such Claims are based on law, statute, contract, regulation,
ordinance, tort, common law, constitutional provision, or any legal
15  theory of law such as respondent superior, or any other legal or
equitable ground and whether such Claims seek as remedies money
16  damages, penalties, injunctions, or declaratory or equitable relief.
Claims subject to this Arbitration Agreement include Claims regarding
17  the applicability of this Arbitration Agreement or the validity of the
entire Cardmember Agreement or any prior Cardmember Agreement.
18  This Arbitration Agreement includes Claims that arose in the past, or
arise in the present or the future. As used in this Arbitration
19  Agreement, the term Claim is to be given the broadest possible
meaning.
20
Claims subject to arbitration include Claims that are made as
21  counterclaims, cross claims, third party claims, interpleaders or
otherwise, and a party who initiates a proceeding in court may elect
22  arbitration with respect to any such Claims advanced in the lawsuit by
any party or parties.
23
As an exception to this Arbitration Agreement, you retain the right to
24  pursue in a small claims court any Claim that is within that court's
jurisdiction and proceeds on an individual basis. If a party elects to
25  arbitrate a Claim, the arbitration will be conducted as an individual
action. Neither you nor we agree to any arbitration on a class or
26  representative basis, and the arbitrator shall have no authority to
proceed on such basis. This means that even if a class action lawsuit or
27  other representative action, such as that in the form of a private
attorney general action, is filed, any Claim between us related to the
28  issues raised in such lawsuits will be subject to an individual
arbitration claim if either you or we so elect.

8

No arbitration will be consolidated with any other arbitration proceeding without the consent of all parties. The only Claims that may be joined in an individual action under this Arbitration Agreement are (1) those brought by us against you and any co-applicant, joint cardmember, or authorized user of your Account, or your heirs or your trustee in bankruptcy or (2) those brought by you and any co-applicant, joint cardmember, or authorized user of your Account, or your heirs or your trustee in bankruptcy against us.

Initiation of Arbitration. The party filing a Claim in arbitration must choose one of the following three arbitration administrators: American Arbitration Association; JAMS/Endispute ("JAMS"); or National Arbitration Forum. These administrators are independent from us. The administrator does not conduct the arbitration. Arbitration is conducted under the rules of the selected arbitration administrator by an impartial third party chosen in accordance with the rules of the selected arbitration administrator and as may be provided in this Arbitration Agreement. Any arbitration hearing that you attend shall be held at a place chosen by the arbitrator or arbitration administrator within the federal judicial district in which you reside at the time the Claim is filed, or at some other place to which you and we agree in writing. You may obtain copies of the current rules of each of the three arbitration administrators, information about arbitration and arbitration fees, and instructions for initiating arbitration by contacting the arbitration administrators.

American Arbitration Association, 335 Madison Avenue, Floor 10, New York, NY 10017-4605, Web site: www.adr.org, 800-778-7879

JAMS, 1920 Main Street, Suite 300, Irvine, CA 92610, Web site: www.jamsadr.com, 800-352-5267

National Arbitration Forum, P.O. Box 50191, Minneapolis, MN 55405, Web site: www.arbitration-forum.com, 800-474-2371

Procedures and law applicable in arbitration. A single, neutral arbitrator will resolve Claims. The arbitrator will either be a lawyer with at least ten years experience or a retired or former judge. The arbitration will be conducted under the applicable procedures and rules of the arbitration administrator that are in effect on the date the arbitration is filed unless those procedures and rules are inconsistent with this Arbitration Agreement, in which case this Agreement will prevail. These procedures and rules may limit the amount of discovery available to you or us. The arbitrator will apply applicable substantive law consistent with the FAA and applicable statutes of limitations, and will honor claims of privilege recognized at law. You may choose to have a hearing and be represented by counsel. The arbitrator will take reasonable steps to protect customer Account information and other confidential information, including the use of protective orders to prohibit disclosure outside the arbitration, if requested to do so by you or us. The arbitrator will have the power to award to a party any damages or other relief provided for under applicable law, and will not have the power to award relief to, against, or for the benefit of any person who is not a party to the proceeding. If the law authorizes such relief, the arbitrator may award punitive damages or attorney fees. The arbitrator will make any award in writing but need not provide a

9

1  statement of reasons unless requested by a party. Upon a request by
2  you or us, the arbitrator will provide a brief statement of the reasons
   for the award.

3  **Costs.** We will reimburse you for the initial arbitration filing fee paid
   by you up to the amount of $500 upon receipt of proof of payment.
4  Additionally, if there is a hearing, we will pay any fees of the
   arbitrator and arbitration administrator for the first two days of that
5  hearing. The payment of any such hearing fees by us will be made
   directly to the arbitration administrator selected by you or us pursuant
6  to this Arbitration Agreement. All other fees will be allocated in
   keeping with the rules of the arbitration administrator and applicable
7  law. However, we will advance or reimburse filing fees and other fees
   if the arbitration administrator or arbitrator determines there is good
8  reason for requiring us to do so or you ask us and we determine there
   is good cause for doing so. Each party will bear the expense of the fees
9  and costs of that party's attorneys, experts, witnesses, documents and
   other expenses, regardless of which party prevails, for arbitration and
10 any appeal (as permitted below), except that the arbitrator shall apply
   any applicable law in determining whether a party should recover any
11 or all fees and costs from another party.

12 **Enforcement, finality, appeals**. Failure or any delay in enforcing this
   Arbitration Agreement at any time, or in connection with any
13 particular Claims, will not constitute a waiver of any rights to require
   arbitration at a later time or in connection with any other Claims. Any
14 decision rendered in such arbitration proceeding will be final and
   binding on the parties, unless a party appeals in writing to the
15 arbitration organization within 30 days of issuance of the award. The
   appeal must request a new arbitration before a panel of three neutral
16 arbitrators designated by the same arbitration organization. The panel
   will reconsider all factual and legal issues anew, follow the same rules
17 that apply to a proceeding using a single arbitrator, and make decisions
   based on the vote of the majority. Each party will bear their own fees,
18 costs and expenses for any appeal, but a party may recover any or all
   fees, costs and expenses from another party, if the majority of the
19 panel of arbitrators, applying applicable law, so determines. An award
   in arbitration will be enforceable as provided by the FAA or other
20 applicable law by any court having jurisdiction.

21 **Severability, survival.** This Arbitration Agreement shall survive: (i)
   termination or changes in the Cardmember Agreement, the Account
22 and the relationship between you and us concerning the Account, such
   as the issuing of a new account number or the transferring of the
23 balance in the Account to another account; (ii) the bankruptcy of any
   party or any similar proceeding initiated by you or on your behalf; and
24 (iii) payment of the debt in full by you or by a third party. If any
   portion of this Arbitration Agreement is deemed invalid or
25 unenforceable, the remaining portions shall nevertheless remain in
   force."

26
   See Revised Agreement § entitled ARBITRATION AGREEMENT.
27
        12.    Plaintiff continued to use the Account. Further, Chase's records do not indicate that Chase
28
   received any returned mail indicating that the Revised Agreement was returned as undeliverable by the postal

1   service.  Thus, Plaintiff agreed to the terms of the Revised Agreement including the Arbitration Provision

2   contained therein.

3         13.     The documents attached to this affidavit as exhibits are true and accurate copies of records

4   that are generated by Chase in the regular course of business.

5         I declare under penalty of perjury and under the laws of the United States of America that the

6   foregoing is true and correct and executed this *23* day of *Feb.*      , 2008.

7

8                                   _Denna Barrett_
                                   Donna Barrett

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION IN SUPPORT OF CHASE BANK USA, N.A.'s MOTION TO COMPEL ARBITRATION

EXHIBIT "A"

**MASTERCARD® and VISA®**
**CARDMEMBER AGREEMENT**

### GENERAL TERMS

1.    **Meaning of Words Used in This Agreement.** "Agreement" means this document (which has a binding arbitration provision that may affect your right to go to court, your right to a jury trial, and your right to participate in a class action or other representative action) and the Pricing Schedule (which may initially appear on your card carrier containing your credit card), as either may be amended from time to time. In this Agreement, "you," "your" or "yours" means each person who applied for the Visa or MasterCard Account. "We," "us" or "our" means Chase Manhattan Bank USA, National Association - the issuer of this Account. "Account" means the Visa or MasterCard Account for which you were issued cards and checks imprinted with your Account number. "Authorized User" means any person to whom you have given permission to use your Account. "Card" means the Visa or MasterCard card(s) issued in connection with your Account. "Check" means Convenience Checks. "ATM" means Automated Teller Machine. "Our check" means a check drawn on us or one of our affiliates. "Seller" means any merchant, insurance company or its agent or broker.

2.    **Services of This Account.** This Account may be used for Purchases from any Seller that accepts the Card and for Advances. You agree not to make or permit to be made any illegal transactions on your Account through the use of a Card, a Check or any other manner.

3.    **To Use Your Card.** You must sign the panel on the back of your Card. Authorized Users of any additional Card(s) should sign their names on the panel on the back of those Cards. For Purchases, you will have to sign a sales slip that has your name, the Seller's name, and your Account number on it, unless you let the Seller complete the sales slip for you.

4.    **Your Responsibilities for This Account.** You are responsible for all amounts owed on this Account, whether charged by you, a person whom you permit to obtain credit on your Account (such as by lending a person your Card), or any other person using a Card or your Account with actual, implied or apparent authority.  You agree that anyone who is issued a Card for your Account (or anyone to whom you lend or give your Card) is authorized to make charges to your Account to the same extent as you and we are not responsible for controlling such use of your Account. Such authority will continue until you revoke it by notifying us, obtaining the Card in your physical possession, and if it is a Card issued to an Authorized User, by also cutting it in half.  If you receive a benefit from the use of your Card or Account by another person, such use will not be considered unauthorized. We may require Authorized Users to repay the amount owed for the charges they make. If more than one person signed the initial application or otherwise accepts or agrees to be obligated on the Account and continues to be listed as a joint account holder in our records (joint account), each of you is bound by this Agreement and is responsible for payment of all amounts owed under this Agreement.

1

**5.    Your Credit Line.** Your credit line is the most you may owe on your Account at any time. You will be told the amount of your credit line. You may not use your Account in any way that would cause you to go over your credit line. You may also be asked to immediately pay for any amount over your credit line. We may change your credit line or separate the amount of your credit line into available credit for Purchases and Advances. If the credit line is changed or limited, you will be notified.

**6.    Overlimit Fee.** If your Account balance (including any Finance Charges and any fees and charges owed on your Account) is over your credit line at the end of a billing cycle, there will be an Overlimit Fee as disclosed in Pricing Schedule Box 10. This fee will be imposed only once during the billing cycle, but will be imposed in each billing cycle that you are over your credit line even if we authorize the transaction that causes your credit line to be exceeded.

**7.    Annual Fee.** If there is an Annual Fee for the Account, you will be billed the Annual Fee disclosed in Pricing Schedule Box 7 whether or not you have used the Account until the Account is closed and paid in full. If your Annual Fee has been waived, it will be billed when the waiver period has ended, and will then continue to be billed on an annual basis. The Annual Fee is non-refundable.

**8.    Payments.** All payments must be made and received by us in accordance with the payment instructions that appear on or with your monthly statements and accompanying envelopes. Payments must be in United States Dollars and drawn on a United States financial institution or the United States Postal Service. In our sole discretion we will decide how to apply your payments. Although we post your payments as of the business day we receive them as described on your statements, your Total Available Credit may not be restored for up to 15 days after we post your payment. Any payment check which you send us for less than the full balance due that is marked "paid in full" or with a similar notation or that you otherwise tender in full satisfaction of a disputed amount (conditional payments), must be sent to us at the conditional payments address listed on your monthly statement. We reserve all our rights regarding such checks. For example, if it is determined there is no valid dispute or if any such check is received at any other address, we may accept the check and you will still owe any remaining balance. We may refuse to accept any such check by returning it to you, not cashing it or by destroying it. All other payments should be sent to the regular payment address shown on your monthly statements.

**9.    Immediate Phone Payment Fee.** We may in our discretion permit you to make payments by authorizing us on your behalf to transfer funds from a deposit or other account to your Account. For each such payment, you will be charged an Immediate Phone Payment processing fee in the amount disclosed in Pricing Schedule Box 10.

**10.    Returned Payment Fee.** You will be charged the fee disclosed in Pricing Schedule Box 10 for each check or payment instrument given in payment which is returned to us or which we cannot process under our normal operating procedures.

**11.    Minimum Payment.** You may pay either the Minimum Payment or any amount over that up to the New Balance. Your Minimum Payment must be in accordance with our payment instructions and received by the time of day on the Payment Due Date shown on your statement. Your Minimum Payment is calculated by taking the New Balance and deducting any amounts which you have properly notified us are in dispute (see notice "In Case of Errors or Inquiries About Your Bill") and multiplying that amount by the minimum payment percentage shown in Pricing Schedule Box 10. If the resulting amount is more than the minimum payment minimum dollar amount shown in Pricing Schedule Box 10, it will be reduced to the next lowest dollar. If the resulting amount is less than that minimum payment minimum dollar amount, it will be increased to that minimum payment minimum dollar amount. If the Minimum Payment as calculated above is less than the Total Finance Charge as shown on your statement, your Minimum Payment for that statement instead will equal the Total Finance Charge (rounded up to the nearest dollar). We add to your Minimum Payment any Past Due Amounts and, at our option, any amounts in excess of your credit line. The Minimum Payment will never be more than the New Balance.

**12.    Late Payment Fee/Charge.** There will be a Late Payment Fee/Charge in the amount disclosed in Pricing Schedule Box 10 if we do not receive in accordance with our payment instructions the Minimum Payment by the time of day on the Payment Due Date shown on your monthly statement.

**13.    If Your Cards or Checks are Lost or Stolen.** If someone used your Card(s) or Checks without your permission or if they are lost or stolen, contact us immediately. You may call or write. Call toll free 1-800-237-7400 anytime from all 50 states, Washington, D.C., Puerto Rico, and the U.S. Virgin Islands. For all other locations call 813-884-2997 collect. Write to: P.O. Box 15919, Wilmington, DE 19850-5919. You may be liable for the unauthorized use of your Card(s) in an amount not to exceed $50 in any case where your Card(s) are lost or stolen and you fail to contact us within twenty-four (24) hours. You will not be liable for such unauthorized use if you contact us in the manner described immediately above within the twenty-four (24) hour time limit or before the unauthorized use occurs.

**14.    Card Replacement Fee.** You may be charged a Card Replacement fee in the amount disclosed in Pricing Schedule Box 10 for any special services such as obtaining your Card on an expedited basis.

**15.    If Your Card or Check is Refused.** We are not responsible if a Seller, Bank or ATM refuses to honor your Card or Check. Although you may have credit available, we may not authorize credit for a particular transaction due to operational difficulties or, in our discretion, for any other appropriate reason.

Transactions made above a certain dollar amount may require authorization before the transaction is approved. The number of transactions you make in one day may be limited by us. This is done for security reasons, and as such, the details of how the authorization system works are not listed in this Agreement. Neither we nor our agents will be responsible if authorization for

2

3

000601

transaction is not given. If your Account is overlimit or elinquent, credit authorization for transactions may be declined.

**6. Monthly Statements.** Each month there is a debit or credit alance of more than $1, or a Finance Charge has been imposed n your Account, we will mail you a statement.

**7. Copy Fee.** You will be charged the fee disclosed in Pricing ichedule Box 10 for each original or copied sales-slip, copied :tatement, and copy of any other record or document that you equest. The fee is not owed if a request for such record or :locument reveals a billing error or unauthorized use on your Account as defined by the Federal Reserve Board's Regulation Z.

**18. Billing Errors.** If you have a dispute about your Account, notify JS as soon as possible. Please read the notice "In Case of Errors or Inquiries About Your Bill." This notice explains your legal rights about billing errors and defenses under Federal Law and how you must notify us. If any adjustment is made, we will credit your Account.

**19. Currency Conversion.** If you effect a transaction with your MasterCard card or Visa card in a currency other than U.S. dollars, MasterCard International Incorporated or Visa International, as appropriate, will convert the charge into a U.S. dollar amount. MasterCard International or Visa International will use its conversion procedure, which is disclosed to institutions that issue MasterCard cards or Visa cards, respectively. Currently, the currency conversion rate used by MasterCard International or Visa International to determine the transaction amount in U.S. dollars for such transactions is generally either a government-mandated rate or a wholesale rate determined by MasterCard International or Visa International, as appropriate, for the processing cycle in which the transaction is processed, increased by an adjustment factor established from time to time by MasterCard International and Visa International, respectively. The currency conversion rate used by MasterCard International or Visa International on the date your transaction is processed by MasterCard International or Visa International may differ from the rate that would have been used on the purchase or transaction date or the cardholder statement posting date. The adjustment factor that is part of the currency conversion rate is one percent, but may be changed from time to time by MasterCard International or Visa International, respectively. For each such transaction converted into a U.S. Dollar amount that must be converted back into a foreign currency because of a refund or other reversal of the transaction, the same currency conversion rate formula and procedures will be used.

**20. Foreign Currency Transaction Fee.** For each transaction in a foreign currency, we will charge a foreign transaction fee equal to the percentage shown in Pricing Schedule Box 10 multiplied by the converted transaction amount. This fee may be abbreviated as "For. Tran. Fee."

**21. Authorization to Provide Information.** You authorize us to provide certain information on you and your Account to our affiliates and others, including any company whose name or mark may appear on the Cards. Complete details regarding our rights to share information and your right to opt-out of certain information being shared is provided to you when you first receive an Agreement and at least once each calendar year thereafter.

**22. Disputing Account Information Reported to Credit Bureaus.** We furnish information about your Account to credit bureaus. You have the right to dispute the accuracy of the information reported by writing us at P.O. Box 15823, Wilmington, DE 19850-5823.

**23. Changing the Terms of This Agreement.** We may change any of the terms of this Agreement, including without limitation by adding new terms or by deleting or modifying existing terms. We will notify you of any such changes as required by law. Any changes to this Agreement can apply to all outstanding unpaid indebtedness and any new transactions on your Account. We may sell or transfer your Account and any amounts owed on your Account to another person at any time. If we do, this Agreement will still be in effect and any successor will have our rights in this Agreement to the extent assigned.

**24. Default and Collection Costs.** Your Account will be in default and we can require that the total outstanding balance be paid if: (1) you fail to pay any amount owed under this Agreement when due; (2) you exceed the credit limit in effect on your Account; (3) you do not follow the terms of this Agreement; (4) your ability to pay us is materially impaired (including, but not limited to, bankruptcy or insolvency proceedings that are initiated by or against you); or (5) you default on any other loan or credit obligation you have with us or another creditor. We do not have to notify you or demand payment in order to take this action. If you are in default, we may, as permitted by law: cancel your credit privileges and require you to pay the unpaid balance immediately; require you to pay interest at the rate of two percent (2%) a month on the unpaid balance when we deem your Account to be six or more billing cycles past due; and require you to pay reasonable attorney's fees, any court costs and other collection costs incurred by us in the collection of any amounts you owe under this Agreement.

**25. Cancellation.** We may close your Account at any time. You will be responsible for repaying any Purchases, Advances or other outstanding charges that are still due on your Account. Your Card is issued as a way of letting you use your Account. It may not be transferred. If we request the Card(s), you must return them. Any services not described in this Agreement that may be provided from time to time in connection with the Account are not part of this Agreement and may be changed or cancelled at any time without notice or refund.

**26. Governing Law. This Agreement is governed by the laws of the United States and the State of Delaware.** Any dispute concerning any item in this Agreement will be resolved by those laws.

**27. Telephone Monitoring.** You agree that your telephone communications with us may be monitored and recorded to improve customer service and security.

**28. Delayed Enforcement.** We may delay enforcing or not enforce any of our rights under this Agreement without losing any of them.

**29. Severability.** The invalidity of any provision of this Agreement shall not affect the validity of any other provision.

4

5

10. **Consumer Reports.** We may obtain consumer credit reports from credit bureaus on you at any time in connection with any extension of credit on your Account, to review your Account, or for other permitted purposes.

## SPECIAL RATES

1.    **Special Rates.** From time to time, we may offer you special Periodic Rates and terms on your Account, either for balance transfer transactions using special checks or other written request forms we provide or verbal requests for such transfers which we agree to honor (referred to as "Balance Transfers" for purposes of this Agreement) or for other offers on your Account such as introductory, promotional or other reduced rate offers. If we do, we will advise you of the special rates, how long they will be in effect, the balances to which they will apply, and the rates that will apply after the special rates expire. The terms of this Agreement apply to any such special rates. If a special rate is variable, then the "Variable Rate" terms of this Agreement (including the Pricing Schedule) will apply. You may lose any special rate that is offered you and regular/standard Preferred Pricing will apply, if you fail to make any required minimum payment by the Payment Due Date. You may lose regular/standard Preferred Pricing and Non-Preferred Pricing will apply, if you fail to meet the conditions of the "Preferred Customer Pricing Eligibility" section of this Agreement.

2.    **Balance Transfer Transactions.** Balance Transfer transactions are treated as Purchases except as noted in this Agreement or any offer we make to you. These transactions will not be eligible for the grace period for Purchases, except as stated in the terms of any Balance Transfer offer made to you. We may identify Balance Transfers and the related promotional balances by different terms such as "Transferred Balance" or "Balance Transfer." If a check or other form of transfer for a Balance Transfer transaction is used to pay any amounts you owe to any JPMorgan Chase bank or company, is made payable to cash, is received by us and posted to your Account after the expiration date of the offer, is otherwise used in a way that does not transfer balances you owe to other creditors to your Account, or is used in any way not specified in the promotional offer we make you, we reserve the right to refuse to honor that Balance Transfer transaction or to treat it as an Advance.

3.    **Transaction Fee for Balance Transfer Transactions.** For each Balance Transfer transaction described in any offer we may make to you, we may charge a Transaction Fee FINANCE CHARGE in the amount disclosed in Pricing Schedule Box 9. This fee may be reduced in our sole discretion in any offer we make to you. Transaction Fees are part of the Finance Charge. The addition of Balance Transfer Transaction Fees may cause the Annual Percentage Rate for Balance Transfer transactions to exceed the nominal Annual Percentage Rate shown on your statement.

## TERMS FOR ADVANCES

1.    **Advances.** An Advance is a cash loan or similar transaction. You may take an Advance as follows. 1) Using your Checks. These Checks may only be used by the person(s) whose names are pre-printed on the Checks. We will not certify these Checks. 2) Using any of our ATM's or any ATM, which may be provided for your use by another financial institution or company. 3) Using a Cash Advance slip. Cash Advance slips may be obtained from any of our branches or from any bank that accepts the Card. 4) Using the official check mailed to you in response to your request. 5) Using any other service that may be connected to your savings or checking accounts, which may be offered by us, that allows you to take Advances on this Account. 6) Entering into transactions that involve the purchase of items convertible to cash or similar transactions, which we may treat as Advances, including but not limited to wire transfers, money orders, travelers cheques, gaming transactions, and tax payments. Advances may also be referred to as Cash Advances or Cash.

2.    **Declined Check Fee.** You will be charged the fee disclosed in Pricing Schedule Box 10 for each Check or Balance Transfer check issued which cannot be processed because you are over your credit line, or would be if such check were processed, or your Account is delinquent or closed.

3.    **Stop Payment Fee.** You will be charged the fee disclosed in Pricing Schedule Box 10 for each request you make for us to stop payment on a Check or other form of Advance we make on your behalf or to cancel a stop payment request. You must provide us with any information we reasonably require in order to process your stop payment or cancellation request. We do not have to honor any stop payment or cancellation request unless we have a reasonable opportunity to act on it before the Check or other form of Advance is paid or approved for payment. We will not be liable in any way for any stop payment or cancellation request that we honor or fail to honor if we used ordinary care.

4.    **Limits on Advances.** For Advances taken from an ATM, there is a limit for each transaction and a daily limit that you may obtain.

5.    **Service Charge/Transaction Fee for Advances.** For each Advance, there will be a Transaction Fee as disclosed in Pricing Schedule Box 9. Any minimum and maximum Transaction Fees are also disclosed in the Pricing Schedule. The total amount of Transaction Fees will be shown in the descriptive portion of your statement. Transaction Fees are part of the FINANCE CHARGE. The addition of Transaction Fees may cause the Annual Percentage Rate on Advances to exceed the nominal Annual Percentage Rate shown on your statement.

6.    **Our Responsibilities to Honor Checks.** We may not accept your checks if: 1) by paying a Check or our check you would go over your credit line; 2) your Check or payment check is postdated; 3) your Cards or Checks have been reported lost or stolen; 4) your Account has been cancelled or has expired. If a postdated check is paid and as a result any other check is returned or not paid, we are not responsible. You may not use a Check to pay any amount you owe under this Agreement.

6

7

## TERMS FOR PURCHASES

You may use your Account to purchase or lease goods and services or for lodging services when making guaranteed reservations or advance deposits.

### TERMS FOR BALANCE TRANSFERS, ADVANCES AND PURCHASES

**1. Calculation of Finance Charge for Balance Transfers, Advances and Purchases.** That portion of the Finance Charge which is determined by using the daily Periodic Rate is calculated separately for Balance Transfers, Advances and Purchases, but using the same method (generally known as the "average daily balance, including new transactions" method). Separate average daily balances (which may be referred to as "Finance Charge Balances") are calculated for Balance Transfers, Advances and Purchases, and each such balance is multiplied by the applicable daily Periodic Rate. Subject to the grace period for Purchases described below, Finance Charges accrue on Purchase, Advance and Balance Transfer transactions and fees beginning on the date the transaction occurs or on the first day of the billing cycle it is received by us (whichever is later), or, at our option, the date the transaction is posted to your Account. Finance Charges continue to accrue until payment in full is received.

We determine each of the average daily balances as follows. For each day in the billing cycle, we take that day's beginning balance for Balance Transfers, Advances and Purchases (an amount that includes accrued and/or unpaid Finance Charges, fees and other charges from previous billing cycles) and add any new Balance Transfers, Advances, Purchases, or other debits to the appropriate balance. We also add to each such balance an amount equal to the previous day's ending balance of Balance Transfers, Advances or Purchases multiplied by the applicable daily Periodic Rate (or if more than one rate could apply depending on the average daily balance reaching a certain level, the lowest applicable rate). We then subtract from the appropriate balance any payments or credits posted that day. This gives us the daily balances for Balance Transfers, Advances and Purchases. We then add all of the daily balances separately for Balance Transfers, Advances and Purchases (excluding days which end with a credit balance), and divide each sum by the number of days in the billing cycle. This gives us the average daily balances for Balance Transfers, Advances and Purchases. All fees charged to your Account are added to the appropriate Purchase balance, except for any Transaction Fee that is added to the appropriate Purchase, Advance or Balance Transfer balance. This Agreement provides for the compounding of Finance Charges.

Then we multiply each average daily balance by the applicable daily Periodic Rate, and then by the number of days in the billing cycle. The daily Periodic Rate will equal 1/365th of the Annual Percentage Rate. The daily Periodic Rate and Annual Percentage Rate are disclosed in the applicable portion of the Pricing Schedule, as may be amended from time to time. These

FINANCE CHARGES determined by Periodic Rate for Balance Transfers, Advances and Purchases are added to any Transaction Fee FINANCE CHARGES to get the combined amount of FINANCE CHARGE shown on your monthly statement. For Purchases only, there is a minimum FINANCE CHARGE of fifty cents ($.50) if a Finance Charge for Purchases is imposed.

There will not be a periodic rate Finance Charge on Purchases if we receive payment for the "New Balance" by the time of day on the "Payment Due Date" shown on the monthly statement. (This is known as the "grace period.") You may also avoid Finance Charges for new Purchases for the first billing cycle in which they are posted to your Account if that cycle began with a "Previous Balance" of zero or the "Previous Balance" is reduced to zero by credits or payments we receive by the time of day on the "Payment Due Date" shown on your previous monthly statement. Payments must be in accordance with our payment instructions. There is no grace period for Balance Transfers unless the terms of the Balance Transfer offer state there will be a grace period, and for Advances.

**2. Periodic Rates.** The daily Periodic Rates applied to the Balance Transfers, Purchases and Advances average daily balances and the corresponding **ANNUAL PERCENTAGE RATES** are in the Pricing Schedule. Where the Pricing Schedule includes "Variable Rate Index and Margin" information for a particular rate that applies to your Account, that rate is a variable rate and the disclosure below regarding variable rates apply for that rate. Where the Pricing Schedule does not include such "Variable Rate Index and Margin" information for any particular rate (as indicated by an "N/A" for "not applicable" or the absence of such information in the Pricing Schedule), that rate is fixed and the disclosures below regarding variable rates do not apply. Further, for any particular rate in the Pricing Schedule that is preceded by the terms "Preferred" or "Non-Preferred", that rate is subject to the "Preferred Customer Pricing Eligibility" section that appears below. When your Account satisfies the "Preferred Customer Pricing" conditions, the "Preferred" rates may apply; when it does not, the "Non-Preferred" rates apply. If different Periodic Rates apply to balances incurred before and after a certain date or transaction, we may identify such balances in promotional offers, on statements or otherwise using terms such as "Current" or "New" to refer to balances subject to promotional rates or new transactions, and "Prior" or "Old" to refer to balances subject to regular rates or existing balances. For example, different rates may apply to balances incurred before and after the date a Balance Transfer subject to a promotional rate offer posts to your Account, or to balances incurred before and after your Account becomes eligible for Preferred rates after a Non-Preferred rate was in effect. If the Periodic Rate for one type of balance on your Account is the same as the Periodic Rate for another balance, we may combine them and refer to those combined balances as Purchases, Balance Transfers or Advances as applicable.

**3. Variable Rates.** If the daily Periodic Rate and corresponding **ANNUAL PERCENTAGE RATE** that apply to your Account are variable rates (see the Pricing Schedule), they may

8

9

increase or decrease from one billing cycle to another. These rates are based on the value of an index (the "Index") to which we add a margin. The Index and margin are in the Pricing Schedule. The Index plus the margin determine the nominal **ANNUAL PERCENTAGE RATE.**

If the Index is not published on the relevant date, the Index we use in setting the daily Periodic Rate for Purchases, Balance Transfers and/or Advances on your Account will be the Prime Rate published in *The New York Times* or any other newspaper of national circulation selected by us. For purposes of this Agreement, the Index is merely a pricing Index. It is not, and should not be considered by you to represent, the lowest or the best interest rate available to a borrower at any particular bank at any given time.

The daily Periodic Rate for Balances Transfers, Purchases and/or Advances increases when the Index increases on the relevant date, and decreases when the Index decreases on the relevant date. An increase in the rate may cause you to pay a larger Finance Charge and a higher minimum monthly payment. A decrease in the rate may cause you to pay a smaller Finance Charge and a lower minimum monthly payment. Any limit on the amount by which the daily Periodic Rate and the corresponding Annual Percentage Rate may change at any one time or over the life of your Account is set forth in the Pricing Schedule. If no limit appears for any particular rate, then that rate has no limit by which it may change.

4. **Preferred Customer Pricing Eligibility.** If "Preferred" and "Non-Preferred" rates appear in the Pricing Schedule, this section applies to your Account. Your Account will be reviewed every month on your Statement Closing Date to determine its continued eligibility for the Preferred or Non-Preferred rates. On each monthly review, we may change your interest rates and impose a Non-Preferred rate up to the maximum Non-Preferred rate (subject to any minimum rate) described in your Agreement for each occurrence when you do not meet the conditions described below to be eligible for Preferred rates. Any changes in your interest rates as a result of the monthly reviews for Preferred or Non-Preferred rates will be effective with the billing cycle ending on the review date.

To be eligible for Preferred rates, the following conditions must be met as of the review date: you have made at least the required minimum payments when due on your Account and on all other loans or accounts with us and your other creditors; the credit limit on your Account has not been exceeded; and any payment on your Account has not been returned unpaid.

If you do not meet all of these conditions, then you will be in default under this Agreement and your Account may lose its Preferred rates. In this event, a Non-Preferred rate up to the maximum Non-Preferred rate (subject to any minimum rate) will apply to all existing and new balances on your Account, and these balances will remain subject to a Non-Preferred rate until they are paid in full. When we review your Account in subsequent monthly reviews, your Account may again be eligible for Preferred rates for new Purchases, new Balance Transfers and new Advances if, for a time period not to exceed

12 months, the following conditions are met: your Account is open, you have made the required minimum payments when due on your Account and on all other loans or accounts with us and your other creditors, the credit limit on your Account has not been exceeded and any payment on your Account has not been returned unpaid. Notwithstanding the above, we may waive our rights, such as our right to enforce a Non-Preferred rate on existing and new balances until paid in full or to enforce any minimum Non-Preferred rate. However, if we do waive any of our rights and there is another occurrence when you do not meet the conditions described above to be eligible for Preferred rates, we may again impose a Non-Preferred rate up to the maximum Non-Preferred rate (subject to any minimum rate) on all existing and new balances until they are paid in full.

We may obtain consumer credit reports from credit bureaus on you at any time in the future. We may use the reports and their contents, as well as information about your Account including its payment and/or usage history and your other relationships with us and our affiliates, to review your Account including for the purposes of determining its eligibility for Preferred rates and of establishing the Non-Preferred rates that may apply to your Account.

### ARBITRATION AGREEMENT

IT IS IMPORTANT THAT YOU READ THIS ARBITRATION AGREEMENT CAREFULLY. IT PROVIDES THAT YOU MAY BE REQUIRED TO SETTLE A CLAIM OR DISPUTE THAT IS COVERED BY THIS ARBITRATION AGREEMENT THROUGH ARBITRATION, EVEN IF YOU WOULD PREFER TO LITIGATE THE CLAIM IN A COURT. YOU ARE GIVING UP RIGHTS YOU MIGHT HAVE TO LITIGATE SUCH CLAIMS IN A COURT OR BEFORE A JURY OR TO PARTICIPATE IN A CLASS ACTION LAWSUIT OR OTHER REPRESENTATIVE ACTION WITH RESPECT TO SUCH A CLAIM. OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT, SUCH AS DISCOVERY OR THE RIGHT TO APPEAL THE DECISION, MAY NOT BE AVAILABLE IN ARBITRATION OR MAY BE MORE LIMITED. CERTAIN CLAIMS BY EITHER OF US AGAINST THE OTHER SEEKING UP TO $25,000, EXCLUDING INTEREST, COSTS AND FEES, MAY BE RESOLVED BY LITIGATION AND NOT ARBITRATION.

1. **Binding Arbitration.** This Arbitration Agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by and be enforceable under the Federal Arbitration Act (the "FAA"), 9 U.S.C. §1-16 as it may be amended. This Arbitration Agreement sets forth the circumstances and procedures under which claims (as defined below) may be resolved by arbitration instead of being litigated in court.

2. **Claims Covered.** Any claim or dispute ("Claim", which term may refer to more than one claim as is appropriate for the context in which it is used) by either you or us against the other, or against the employees, agents, or assigns of the other arising from or relating in any way to the Cardmember Agreement, any prior Cardmember Agreement, your credit card Account or, the advertising, application or approval of your Account, will, at the

10

11

election of either you or us, be resolved by binding arbitration. This Arbitration Agreement governs all Claims, whether such Claims are based on law, statute, contract, regulation, ordinance, tort, common law, constitutional provision, or any legal theory of law such as respondent superior, or any other legal or equitable ground and whether such Claims seek as remedies money damages, penalties, injunctions, or declaratory or equitable relief. Claims subject to this Arbitration Agreement include Claims regarding the applicability of this Arbitration Agreement or the validity of the entire Cardmember Agreement or any prior Cardmember Agreement. As used in this Arbitration Agreement, the term "Claim" is to be given the broadest possible meaning.    Notwithstanding the foregoing, a Claim may be resolved by litigation and is not subject to arbitration under this Arbitration Agreement if (1) the only remedy that will be sought by either of the parties is monetary damages; (2) neither party will seek a recovery in excess of $25,000, excluding interest, costs and fees; and (3) the only parties to the litigation will be you and us. If one party wants a Claim to be resolved by arbitration, but the other party believes the Claim may be litigated subject to this small claims exception, the party seeking arbitration may require reasonable assurance from the other party that the conditions are true and that the party wishing to resolve the Claim by litigation will take no action now or in the future to change the nature of the Claim so that it would no longer meet the conditions of this small claims exception. If such reasonable assurance is not provided, the party seeking such assurance may require the Claim to be resolved by arbitration.

As used in this Arbitration Agreement, the term "Claims" includes claims that arose in the past, or arise in the present or the future. If a party elects to arbitrate a Claim, the arbitration will be conducted as an individual action. The only Claims that may be joined in an individual action under this Arbitration Agreement are (1) those brought by us against you and any co-applicant, joint cardmember, or authorized user of your Account, or your heirs or your trustee in bankruptcy or (2) those brought by you and any co-applicant, joint cardmember, or authorized user of your Account, or your heirs or your trustee in bankruptcy against us. This means that even if a class action lawsuit or other representative action, such as those in the form of a private attorney general action, is filed, any Claim between us related to the issues raised in such lawsuits will be subject to arbitration if you or we so elect. Claims subject to arbitration include Claims that are made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise, and a party who initiates a proceeding in court may elect arbitration with respect to any such Claims advanced in the lawsuit by any party or parties.

For the purposes of this Arbitration Agreement, "we" and "us" means Chase Manhattan Bank USA, N.A., its parent, subsidiaries, affiliates, licensees, predecessors, successors, assigns, any purchaser of your Account, and all of their officers, directors, employees, agents, and assigns or any and all of them. Additionally, "we" or "us" shall mean any third party providing benefits, services, or products in connection with the Account (including but not limited to credit bureaus, merchants that accept

any credit device issued under the Account, rewards programs and enrollment services, credit insurance companies, debt collectors, and all of their officers, directors, employees, agents and representatives) if, and only if, such a third party is named by you as a co-defendant in any Claim you assert against us.

3.    Initiation of Arbitration. The party filing an arbitration must choose one of the following three arbitration administrators: American Arbitration Association; JAMS; or National Arbitration Forum. However, if we elect an administrator, you will have ten days after receiving notice of our election to request that the arbitration be conducted pursuant to rules of one of the other two arbitration administrators. To exercise your choice, you must notify us of your choice by writing us at P. O. Box 15933, Wilmington, DE 19850-5933. Send us a copy of the notice you received and state which of the other two arbitration administrators you choose. These administrators are independent from us. The administrator does not conduct the arbitration. Arbitration is conducted under the rules of the selected administrator by an impartial third party chosen in accordance with this Arbitration Agreement and rules of the selected administrator. Any arbitration hearing that you attend shall be held at a place chosen by the arbitrator or arbitration administrator within the federal judicial district in which you reside at the time the Claim is filed, or at some other place to which you and we agree in writing. You may obtain copies of the current rules of each of the three arbitration administrators, information about arbitration and arbitration fees, and instructions for initiating arbitration by contacting the arbitration administrators.

American Arbitration Association
335 Madison Avenue, Floor 10
New York, NY 10017-4605
Web site: www.adr.org
800-778-7879

JAMS
1920 Main Street, Suite 300
Irvine, CA 92610
Web site: www.jamsadr.com
800-352-5267

National Arbitration Forum
P.O. Box 50191
Minneapolis, MN 55405
Web site: www.arbitration-forum.com
800-474-2371

4.    Procedures and law applicable in arbitration. A single, neutral arbitrator will resolve Claims. The arbitrator will either be a lawyer with at least ten years experience or a retired or former judge. The arbitrator will be selected in accordance with the rules of the arbitration administrator. The arbitration will be conducted under the applicable procedures and rules of the arbitration administrator that are in effect on the date the arbitration is filed unless those procedures and rules are

12

13

inconsistent with this Arbitration Agreement, in which case this Agreement will prevail. These procedures and rules may limit the amount of discovery available to you or us. The arbitrator will apply applicable substantive law consistent with the FAA and applicable statutes of limitations, and will honor claims of privilege recognized at law. You may choose to have a hearing and be represented by counsel. The arbitrator will take reasonable steps to protect customer Account information and other confidential information, including the use of protective orders to prohibit disclosure outside the arbitration, if requested to do so by you or us. The arbitrator will have the power to award to a party any damages or other relief provided for under applicable law, and will not have the power to award relief to, against, or for the benefit of any person who is not a party to the proceeding. The arbitrator may award punitive damages or attorney fees, if such damages are authorized by law. The arbitrator will make any award in writing but need not provide a statement of reasons unless requested by a party. Upon a request by you or us, the arbitrator will provide a brief statement of the reasons for the award.

5.    **Costs.** At your written request, we will advance any reasonable arbitration filing fee, or administrative and hearing fees that you are required to pay to pursue a Claim in arbitration up to the amount of $500. We will reimburse you for the initial fee if you paid it and you prevail on your Claim. If there is a hearing, we will pay any fees of the arbitrator and arbitration administrator for the first two days of that hearing. All other fees will be allocated in keeping with the rules of the arbitration administrator and applicable law. However, we will advance or reimburse filing fees and other fees if the arbitration administrator or arbitrator determines there is good reason for requiring us to do so or you ask us and we determine there is good cause for doing so. Each party will bear the expense of the fees and costs of that party's attorneys, experts, witnesses, documents and other expenses, regardless of which party prevails, for arbitration and any appeal, (as permitted below), except that the arbitrator shall apply any applicable law in determining whether a party should recover any or all fees and costs from another party.

6.    **Enforcement, finality, appeals.** You or we may bring an action including a summary or expedited motion to compel arbitration of Claims subject to arbitration, or to stay the litigation of any Claims pending arbitration, in any court having jurisdiction. Such action may be brought at any time, even if any such Claims are part of a lawsuit. Failure or forbearance to enforce this Arbitration Agreement at any particular time, or in connection with any particular Claims, will not constitute a waiver of any rights to require arbitration at a later time or in connection with any other Claims. Any additional or different agreement between you and us regarding arbitration must be in writing. The arbitrator's decision will be final and binding, except for any right of appeal under the FAA. In addition, the non-prevailing party may appeal any award that exceeds $100,000 or that includes an award of punitive damages. Any request for an appeal must be filed in writing with the same arbitration administrator within 30 days of the receipt by the non-prevailing

party of notice of the original award. The appeal shall be heard before a panel of three neutral arbitrators designated by the same arbitration administrator. The panel will consider all factual and legal issues anew, follow the same rules that apply to a proceeding using a single arbitrator, and make decisions based on the majority vote. The cost of the appeal imposed by the arbitration administrator shall be borne by the appealing party. An award in arbitration will be enforceable as provided by the FAA or other applicable law by any court having jurisdiction.

7.    **Severability, survival.** This Arbitration Agreement shall survive: (i) termination or changes in the Cardmember Agreement, the Account and the relationship between you and us concerning the Account, such as the issuing of a new account number or the transferring of the balance in the Account to another account; (ii) the bankruptcy of any party; and (iii) any transfer, sale, or assignment of your Account, or any amounts owed on your Account, to any other person. If any portion of this Arbitration Agreement is deemed invalid or unenforceable, the remaining portions shall nevertheless remain in force.

**FOR OHIO RESIDENTS.** The Ohio laws against discrimination require that all creditors make credit equally available to all creditworthy customers and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio civil rights commission administers compliance with this law.

### IN CASE OF ERRORS OR INQUIRIES ABOUT YOUR BILL YOUR BILLING RIGHTS-KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us in Case of Errors or Questions About Your Bill**
If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at the address listed on your bill after the word(s) "Questions" or "Send Inquiries To:." Write to us no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.
In your letter, give us the following information:
*   Your name and account number.
*   The dollar amount of the suspected error.
*   Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.
If you have authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment your letter must reach us three business days before the automatic payment is scheduled to occur.

14

15

000607

**Your Rights and Our Responsibilities After We Receive Your Written Notice**

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit line. You do not have to pay any questioned amount while we are investigating, but you are still obliged to pay the parts of your bill that are not in question. If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

**Special Rule for Credit Card Purchases**

If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

    (a)   You must have made the purchase in your home state or, if not within your home state within 100 miles of your current mailing address; and

    (b)   The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

© 2002 Chase Manhattan Bank USA, N.A. All Rights Reserved.

M-51962

000608

EXHIBIT "B"

• **Special Rates.** The portion of the "Special Rates" section of your Agreement that describes how you may lose a special interest rate or a regular interest rate will be revised as follows: "Any special rate offered to you may change to your regular Preferred Pricing rate if you fail to make any required minimum payment on your Account by the Payment Due Date. Any special rate offered to you or any regular Preferred Pricing rate may change to your Non-Preferred rate if you fail to meet the conditions of the 'Preferred Customer Pricing Eligibility' section of this Agreement." The remainder of this section is unchanged.

• **Grace period for Purchases and Payments.** The grace period when you can avoid periodic rate Finance Charges on Purchases and late payment fees for past due payments will be changed to be not less than 20 days. To avoid Purchases periodic rate Finance Charges and late payment fees, your payment of the required amount must reach us by the required time on the Payment Due Date shown on your monthly statement and must be in accordance with any payment instructions. Please refer to your payment and monthly statements for details.

• **Overlimit Fee.** The Overlimit Fee in your Agreement, which applies if your total Account balance is over your credit line at the end of a billing cycle, will be changed as follows. When regular or promotional interest rates are in effect and appear on your monthly statement, this fee will be the same as it is under your existing Account terms. However, the fee will be $35 when the Non-Preferred interest rate is in effect and appears on your monthly statement, which occurs when your Account is not in good standing under the conditions described in the "Preferred Customer Pricing Eligibility" section of your Agreement.

• **Stop Payment Fee.** The "Stop Payment Fee" section of your Agreement will be amended so that this fee may be charged for any stop payment with respect to Balance Transfers on your Account. The first sentence in this section will be as follows: "You will be charged the fee disclosed in your Agreement for each request you make for us to stop payment on a Check, Balance Transfer Check or other form of Advance or Balance Transfer that we make on your behalf or to cancel a stop payment request." The remainder of this

affiliates, to review your Account including for the purposes of determining its eligibility for Preferred rates and of establishing the Non-Preferred rates that may apply to your Account.

**Your rights regarding the changes you can choose not to accept.**

The changes described in this Notice which you can choose not to accept will not become effective if you send us a written letter that you choose not to accept them, in which case your Account will be closed to further use (if it is not already closed). We must receive this letter no later than April 25, 2003. In your letter please include your name, address, account number and a statement that you do not want those changes to apply to your Account. Your letter must be mailed to Chase Manhattan Bank USA, N.A., P.O. Box 15006, Wilmington, DE, 19850-5942. If your letter is received by April 25, 2003, those changes will not apply to your Account and you must pay off any outstanding balances on your Account under your applicable Account terms.

Please retain this Notice for your records.

March, 2003

*CCSI0319*

# CHANGE IN TERMS NOTICE

We would like to explain certain changes in the terms of your Cardmember Agreement ("Agreement"). Some of the terms in this Notice may already be in effect on your Account. Any terms on your Account not changed here remain in effect. The changes described below will take effect for billing cycles ending May 1, 2003 and thereafter. The changes will apply for all existing and future balances on your Account. Please read below about your right to choose not to accept certain changes described in this Notice.

**The following changes will apply automatically to your Account.**

• **Arbitration.** Section 5 entitled "Costs" in the Arbitration portion of your Agreement will be amended to clarify the costs that will be paid or advanced in connection with any arbitration hearing involving your Account. That section will be as follows:

5. **Costs.** We will reimburse you for the initial arbitration filing fee paid by you up to the amount of $500 upon receipt of proof of payment. Additionally, if there is a hearing, we will pay any fees of the arbitrator and arbitration administrator for the first two days of that hearing. The payment of any such hearing fees by us will be made directly to the arbitration administrator selected by you or us pursuant to this Arbitration Agreement. All other fees will be allocated in keeping with the rules of the arbitration administrator and applicable law. However, we will advance or reimburse filing fees and other fees if the arbitration administrator or arbitrator determines there is good reason for requiring us to do so or you ask us and we determine there is good cause for doing so. Each party will bear the expense of the fees and costs of that party's attorneys, experts, witnesses, documents and other expenses, regardless of which party prevails, for arbitration and any appeal (as permitted below), except that the arbitrator shall apply any applicable law in determining whether a party should recover any or all fees and costs from another party.

• **Electronic collection of checks.** The "Payments" section of your Agreement will be amended to include a

© 2003 Chase Manhattan Bank USA, N.A. All Rights Reserved.

new provision regarding our collecting your payment checks electronically from your bank. The new provision will be as follows:

We reserve the right to electronically collect your eligible payment checks, at first presentment and any representment, from the bank account on which the check was drawn. Our receipt of your payment check is your authorization for us to collect the amount of the check electronically, or if needed by a draft drawn against the bank account. Checks will be collected electronically by sending the check amount along with the check, routing and account numbers to your bank. Your bank account may be debited as early as the same day we receive your payment. The original check will be destroyed and an image will be maintained in our records.

• **Returned Payment Fee.** The "Returned Payment Fee" section of your Agreement will be revised to clarify that this fee can be charged for any form of payment that is returned to us. That section will be as follows:

You will be charged the fee disclosed in your Agreement for each check or any other form of payment which is returned to us or which we cannot process under our normal operating procedures.

• **Expedited Payment Fee.** The Immediate Phone Payment fee described in your Agreement will be renamed, and may be referred to as the "Expedited Payment Fee". This fee may be charged for payments that we make on your behalf.

The following changes will apply to your Account unless you choose not to accept them as described later in this Notice.

• **Regular Preferred Interest rate for Advances.** The regular Preferred interest rate for Advances will be changed to equal a variable rate of the Prime Rate Index plus 14.99%, with a minimum rate of a nominal **ANNUAL PERCENTAGE RATE** of 19.99% (daily periodic rate of .05477%). The Variable Rate section of your Agreement applies to this rate. The Prime Rate Index is the highest Prime Rate published in the "Money Rates" table of *The Wall Street Journal* on the last business day of each calendar month. The new regular Preferred rate for Advances may vary based on changes in the Prime Rate Index, subject to the minimum rate. Based on the current Prime Rate Index,

we estimate that as of the effective date of this change your new regular Preferred rate for Advances will be the minimum rate (19.99% APR).

• **Regular Preferred Interest rate for Advances not changed for certain accounts.** If your current regular Preferred interest rate for Advances is a variable rate that is higher than the Prime Rate Index plus 14.99%, or if it is a fixed rate that is higher than 19.99% **ANNUAL PERCENTAGE RATE**, then the new regular Preferred interest rate for Advances will not apply to your Account and your current regular Preferred interest rate for Advances will remain in effect.

• **Non-Preferred Interest rate.** The Non-Preferred interest rate on your Account will be changed to equal a variable rate of up to the sum of the Prime Rate Index (described above) and 19.99%. The Non-Preferred rate applies to all balances on your Account when it is not in good standing under the conditions described in the "Preferred Customer Pricing Eligibility" section of your Agreement. The Variable Rate section of your Agreement applies to the Non-Preferred rate, and the rate may vary based on changes in the Prime Rate Index. Based on the current Prime Rate Index, we estimate that as of the effective date of this change your new Non-Preferred rate will be a nominal **ANNUAL PERCENTAGE RATE** of 24.24% (daily periodic rate of .0664196%).

• **Preferred Customer Pricing Eligibility.** The "Preferred Customer Pricing Eligibility" section of your Agreement will be revised to provide that if you lose Preferred rates and then meet the required conditions for the requisite cure period, your Account may be eligible for reduced Non-Preferred rates or Preferred rates on new transactions. Historical information that precedes this change may be used to determine whether or not your Account meets the conditions of the revised section. This section will be revised to read as follows:

**Preferred Customer Pricing Eligibility.** Your Account will be reviewed every month on your Statement Closing Date to determine if you meet eligibility for the Preferred or Non-Preferred rates. On each monthly review, we may change your interest rates and impose a Non-Preferred rate up to the maximum Non-Preferred rate (subject to any minimum rate) described in your Agreement for each occurrence when you do not meet the conditions described below

to be eligible for Preferred rates. Any changes in your interest rates as a result of the monthly reviews for Preferred or Non-Preferred rates will be effective with the billing cycle ending on the review date.

To be eligible for Preferred rates, the following conditions must be met as of the review date: you have made at least the required minimum payments when due on your Account and on all other loans or accounts with us and your other creditors; the credit limit on your Account has not been exceeded; and any payment on your Account has not been returned unpaid.

If you do not meet all of these conditions, then you will be in default under this Agreement and your Account may lose its Preferred rates. In this event, a Non-Preferred rate (subject to any minimum rate) will apply to all existing and new balances on your Account, and these balances will remain subject to a Non-Preferred rate until they are paid in full. When we review your Account in subsequent monthly reviews, we may determine to charge reduced Non-Preferred rates or reinstate Preferred rates for new Purchases, new Balance Transfers and new Advances if, for a time period not to exceed 12 months, the following conditions are met: your Account is open, you have made the required minimum payments when due on your Account and on all other loans or accounts with us and your other creditors; the credit limit on your Account has not been exceeded; and any payment on your Account has not been returned unpaid. Notwithstanding the above, we may waive our rights, such as our right to enforce a Non-Preferred rate on existing and new balances until paid in full or to enforce any minimum Non-Preferred rate. However, if we do waive any of our rights and there is another occurrence when you do not meet the conditions described above to be eligible for Preferred rates, we may again impose a Non-Preferred rate up to the maximum Non-Preferred rate (subject to any minimum rate) on all existing and new balances until they are paid in full.

We may obtain consumer credit reports from credit bureaus on you at any time in the future. We may use the reports and their contents, as well as information about your Account including its payment and/or usage history and your other credit relationships with us and our

EXHIBIT "C"

ACCOUNT NUMBER:

| PAYMENT DUE DATE | NEW BALANCE | MINIMUM DUE |
|---|---|---|
| 04/20/2003 | | $0.00 |

# Facsimile Copy

MICHAEL DOAN

**CHASE**

Chase Platinum MasterCard□
**ACCOUNT NUMBER:**

| NEW BALANCE | PAYMENT DUE DATE 04/20/2003 | TOTAL CREDIT LINE | TOTAL AVAILABLE CREDIT | STATEMENT CLOSING DATE 03/26/2003 |
|---|---|---|---|---|
| | | | | |

**Here is your Account Summary:**

| | TOTAL |
|---|---|
| Previous Balance | |
| (-) Payments, Credits | 0.00 |
| (+) Purchases, Cash, Debits | 0.00 |
| (+) FINANCE CHARGES | 0.00 |
| (=) New Balance | |
| Minimum Payment Due | |

**Here are your Charges and Credits at a glance:**

| TRAN. DATE | POST DATE | REF. NO | DESCRIPTION OF TRANSACTIONS | CREDITS | CHARGES |
|---|---|---|---|---|---|
| | | | Total of your credits and charges | 0.00 | 0.00 |
| | | | PLEASE SEE ENCLOSED INSERT REGARDING CHANGE IN TERMS. ENROLL IN CHASE PAYMENT PROTECTOR PLAN TODAY. THE PLAN THAT HELPS PROTECT YOUR CREDIT RATING. CHOOSE TO PAY YOUR BILL, VIEW YOUR ACCOUNT INFORMATION AND TRANSFER BALANCES ONLINE. IT'S QUICK, EASY AND SECURE. SIGN UP OR LOG ON NOW AT WWW.ACCOUNTATCHASE.COM | | |

**Here's how we determined your Finance Charge*:**          **Days in Billing Cycle: 29**

| | DAILY PERIODIC RATE | AVERAGE DAILY BALANCE | PERIODIC/MIN. FINANCE CHARGE | TOTAL FINANCE CHARGE | NOMINAL ANNUAL PERCENTAGE RATE | ANNUAL PERCENTAGE RATE |
|---|---|---|---|---|---|---|
| Cash | 0.05477% | $0.00 | $0.00 | $0.00 | 19.99% | 0.00% |
| Purchases | 0.02942% | $0.00 | $0.00 | $0.00 | 10.74% | 0.00% |

* Please see reverse side for balance computation method and other important information.

Questions about your account? Credit Card lost or stolen? Call Chase Customer Service 24 hours a Day, 7 days a week, toll-free, at 1-800-334-0601 or write P.O. BOX 29016, Phoenix, AZ 85038-9016. Para Servicio al Cliente en Español:    1-800-545-0464.

EXHIBIT "D"

# Cardmember Agreement

### 1. ACCEPTANCE OF THIS AGREEMENT

This agreement governs your credit card account with us referenced on the card carrier containing the card for this account. Any use of your account is covered by this agreement. Please read the entire agreement and keep it for your records. The entire agreement may be in separate parts, including this document and a "Rates and Fees" table that is expressly made a part of this agreement. You authorize us to pay for and charge your account for all transactions made on your account. You promise to pay us for all transactions made on your account, as well as any fees or finance charges. If this is a joint account, each of you, together and individually, is responsible for paying all amounts owed, even if the account is used by only one of you.

Please sign the back of your credit card when you receive it. You will be bound by this agreement if you or anyone authorized by you use your account for any purpose, even if you don't sign your card. Whether you use your account or not, you will be bound by this agreement unless you cancel your account within 30 days after receiving your card and you have not used your account for any purpose.

Throughout this agreement, the words "we", "us" and "our" mean Chase Manhattan Bank USA, N.A., the issuer of your credit card and account. The words "you", "your" and "yours" mean all persons responsible for complying with this agreement, including the person who applied for the account and the person to whom we address billing statements, as well as any person who agrees to be liable on the account. The word "card" means one or more cards or other access devices, such as account numbers, that we have issued to permit you to obtain credit under this agreement.

### 2. USING YOUR ACCOUNT

Your account is a consumer account and should be used only for personal, family or household purposes. Unless we agree or it is required by law, we will not be responsible for merchandise or services purchased or leased through use of your account. You promise to use your account only for valid and lawful transactions. For example, internet gambling may be illegal in some places. It is not our responsibility to make sure that you use your account only for permissible transactions, and you will remain responsible for paying for a transaction even if it is not permissible.

**Types of Transactions:**

• **Purchases:** You may use your card to pay for goods or services.

• **Checks:** We may provide you cash advance checks or balance transfer checks as a way to use your account. We also refer to them in this agreement as a check or checks. You may use a check to pay for goods or services, to transfer balances to your account, or for other uses we allow. But you may not use these checks to transfer balances to this account from other accounts with us or any of our related companies. Only the person whose name is printed on the check may sign the check. Cash advance checks may also be referred to as convenience checks.

• **Balance Transfers:** You may transfer balances from other accounts or loans with other credit card issuers or other lenders to this account, or balance transfers we allow. But you may not transfer balances to this account from other accounts with us or any of our related companies. If a portion of a requested balance transfer would exceed your available credit line, we may process a partial balance transfer up to your available credit line.

• **Cash Advances:** You may use your card to get cash from automatic teller machines, or from financial institutions accepting the card; or to obtain travelers checks, foreign currency, money orders, wire transfers or similar cash-like charges; or to obtain lottery tickets, casino gaming chips, race track wagers or for similar betting transactions. You may also use a third party service to make a payment on your behalf and bill the payment to this account. Cash Advances may also be referred to as Advances.

• **Overdraft Advances:** If you have an eligible checking account with one of our related banks, you may link this account to your checking account with our related bank to cover an overdraft on that checking account under the terms of this agreement and your checking account agreement.

**Billing Cycle:**

In order to manage your account, we divide time into periods called "billing cycles." Each billing cycle is approximately one month in length. For each calendar month, your account will have a billing cycle that ends in that month. Your account will have a billing cycle ending in each calendar month whether

or not there is a billing statement for that billing cycle.

**Authorized Users:**

If you allow someone to use your account, that person will be an authorized user. You should think carefully before allowing anyone to become an authorized user because you are allowing that person to use the account as you can. You will remain responsible for the use of your account and each card issued on your account according to the terms of this agreement. This includes your responsibility for paying all charges on your account made by an authorized user.

You may request an additional card for use by an authorized user on your account. If you do so, this account may appear on the credit report of that authorized user.

You must notify us to terminate an authorized user's permission to use your account. If you notify us, we may close the account and/or issue a new card or cards with a different account number. You should also recover and destroy any cards, checks or other means of access to your account from that authorized user.

**Credit Line:**

Your credit line appears on your billing statements. Your billing statement also may show that only a portion of your credit line may be used for cash advances. Cash advance checks, cash advances and overdraft advances are charged against the cash advance portion of your credit line, and all other transactions are charged against your credit line. You are responsible for keeping track of your account balance, including any fees and finance charges, and making sure it remains below your credit line. If your account balance is over your credit line for any reason, we may charge you an overlimit fee as described in this agreement. We may, but are not required to, authorize charges that go over your credit line. You must pay any amount over your credit line, and you must pay us immediately if we ask you to. This agreement applies to any balance over your credit line.

At our discretion, we may increase, reduce, or cancel your credit line, or the cash advance portion of your credit line, at any time. However, if you have asked us not to do so, we will not increase your credit line. A change to your credit line will not affect your obligation to pay us.

**Transactions in Foreign Currencies:**

If you make a transaction in a foreign currency, Visa USA Inc. or MasterCard International, Inc. will convert the transaction into U.S. dollars by using its respective currency conversion procedures in effect on the date it processes the transaction. Currently, each of them uses either a wholesale market rate or a government-mandated rate and adds one percent to that rate. We then add two percent to the figure provided to us. If either Visa USA or MasterCard International ceases adding one percent to the wholesale or government-mandated conversion rate, we will add three percent to the figure provided to us by that entity. The rate in effect on the processing date may differ from the rate on the date you used your card or account. The same process will be used if a transaction must be converted back into a foreign currency such as for a reversal.

**Refusal to Authorize Transactions:**

We may, but are not required to, decline a transaction on your account for any of the following reasons:

• because of operational considerations,

• because your account is in default,

• if we suspect fraudulent or unlawful activity or,

• in our discretion, for any other reason.

We are not responsible for any losses if a transaction on your account is declined, for any reason, either by us or a third party, even if you have sufficient credit available.

For on-line transactions, we may require that you register your account with an authorization system that we select. We will notify you if we want you to register. If you do not register, we may decline your on-line transactions.

**Refusal to Pay Checks:**

Each check you write is your request for funds. When we receive a check for payment, we may review your account to decide whether to authorize that check. We may, but are not required to, reject and return unpaid a check for any reason, including the following examples:

• We or one of our related companies is the payee on the check.

• Your credit line or cash advance portion of your credit line has been exceeded, or would be exceeded if we paid the check.

- The check is post-dated. If a post-dated check is paid, resulting in another check being returned or not paid, we are not responsible.
- You have used the check after the date specified on it.
- You are in default or would be if we paid the check.

**Lost or Stolen Cards, Checks or Account Numbers:**

If any card, check, account number or other means to access your account is lost or stolen, or you think someone used or may use them without your permission, you must notify us at once by calling the Cardmember Service telephone number shown on your card or billing statement. Do not use your account after you notify us, even if your card, check, account number or other means to access your account is found or returned. We may terminate or suspend your credit privileges when you notify us of any loss, theft or unauthorized use related to your account. You may be liable if there is unauthorized use of your account from which you receive no benefit, but you will not be liable for more than $50.00 of such transactions, and you will not be liable for any such transactions made after you notify us of the loss, theft or unauthorized use. However, you must identify for us the unauthorized charges from which you received no benefit.

We may require you to provide us information in writing to help us find out what happened. We may also require you to comply with certain procedures in connection with our investigation.

**3. PAYMENTS**

**Payment Instructions:**

Your billing statement and accompanying envelope include instructions you must follow for making payments and sets forth the date and time by which we must receive the payment.

You agree to pay us amounts you owe in U.S. dollars drawn on funds on deposit in a U.S. financial institution or the U.S. branch of a foreign financial institution using a payment check, money order or automatic debit that will be processed or honored by your financial institution. We will not accept cash payments. Your total available credit may not be restored for up to 15 days after we receive your payment.

Any payment check or other form of payment which you send to us for less than the full balance that is marked "paid in full" or with a similar notation or that you otherwise tender in full satisfaction of a disputed amount (conditional payments), must be sent to us at the conditional payments address listed on your monthly statement. We reserve all our rights regarding such payments. For example, if it is determined there is no valid dispute or if any such payment is received at any other address, we may accept the payment and you will still owe any remaining balance. We may refuse to accept any such payment by returning it to you, not cashing it or by destroying it. All other payments that you make should be sent to the regular payment address shown on your monthly statements.

We reserve the right to electronically collect your eligible payment checks, at first presentment and any representment, from the bank account on which the check is drawn. Our receipt of your payment checks is your authorization for us to collect the amount of the check electronically, or, if needed, by a draft drawn against the bank account. Payment checks will be collected electronically by sending the check amount along with the check, routing and account numbers to your bank. Your bank account may be debited as early as the same day we receive your payment. The original payment check will be destroyed and an image will be maintained in our records.

**Minimum Payment:**

You agree to pay at least the minimum payment due, as shown on your billing statement, so that we receive it by the date and time payment is due. You may pay more than the minimum payment due and may pay the full amount you owe us at any time. If you have a balance that is subject to finance charges, the sooner you pay us, the less you will pay in finance charges because finance charges accrue on your balance each day.

Your billing statement shows your beginning balance and your ending balance (the "New Balance" on your billing statement). If the New Balance is $10 or less, your minimum payment due will be the New Balance. Otherwise, it will be any amount past due; plus one of the following amounts: $10, 2% of the New Balance (reduced to the next lowest dollar) or the total finance charge on your statement (rounded up to the nearest dollar), whichever is greatest. But if any APR on your account is greater than 23% or your balance is over your credit line, we may require a minimum payment that is up to the sum of any amount past due; plus any amount over your credit line; plus the greater of $10 and an amount up to 5% of the New Balance (reduced to the next lowest dollar). If the percentage of the New Balance you are required to pay increases, it will not decrease when your

APR decreases or your New Balance is under your credit line. For either calculation above, we may add to your minimum payment due any fees provided in this agreement such as late or overlimit fees.

**Payment Allocation:**

You agree that we are authorized to allocate your payments and credits in a way that is most favorable to or convenient for us. For example, you authorize us to apply your payments and credits to balances with lower APRs (such as promotional APRs) before balances with higher APRs.

**Credit Balances:**

You may request a refund of a credit balance at any time. We may reduce the amount of any credit balance by the amount of new charges or fees billed to your account.

**Automatic Charges:**

You may authorize a third party to automatically charge your account for repeat transactions (for example, monthly utility charges, memberships and insurance premiums). If automatic charges are stopped for any reason (including because your account is closed or suspended for any reason) or your account number changes, you are responsible for notifying the biller and paying these charges directly. If your account number changes, we may, but are not required to, pay from your new account number charges that you authorized to be billed to your old account number.

**Promotions:**

From time to time we may offer special terms for your account. If we do, we will notify you about the terms of the offer and how long they will be in effect. Any promotion is subject to the terms of this agreement, as modified by the promotional offer.

**Delayed Payment Program:**

We may offer you, in our discretion, a special promotional program that applies to eligible transactions made and/or posted to your account during a specified promotional period. We will notify you about the details of the program when we offer it to you. These transactions, if the offer provides, may be required to meet or exceed a specified dollar amount and/or take place at an eligible merchant location. If the offer provides, eligible transactions may be omitted from your account balance for the purpose of calculating the minimum payment due each month, or they may not be subject to any periodic rate finance charges for a specified period of time. If any portion of eligible transactions is not paid in full by the ending date of the program, or if your account is in default at any time during the program, that portion of the balance will thereafter be included in the minimum payment calculation and accrue finance charges in accordance with the regular terms of your agreement.

**4. FINANCE CHARGES**

**Daily Periodic Rates and Annual Percentage Rates:**

Your annual percentage rates ("APRs") and the corresponding daily periodic rates are listed on the "Rates and Fees" table (the "Table" or "Pricing Schedule") that is at the end of this document or provided separately. To get the daily periodic rate we divide the APR by 365, and in effect always round up at the fifth place to the right of the decimal point. We may also refer to standard rates and promotional rates as preferred rates and default rates as non-preferred rates. We may also refer to any rate or fee disclosed in the Table as a rate or fee disclosed in a Pricing Schedule Box.

**Variable Rates:**

One or more APRs that apply to your account may vary with changes to the Prime Rate. When you have an APR that varies with changes to the Prime Rate, we calculate the APR by adding a margin to the Prime Rate published in *The Wall Street Journal* two business days before the Closing Date shown on your billing statement. The "Prime Rate" is the highest (U.S.) Prime Rate published in the Money Rates section of *The Wall Street Journal*. If *The Wall Street Journal* stops publishing the Prime Rate, we will select a similar reference rate and inform you on your billing statement or through a separate notice.

A "margin" is the percentage we add to the Prime Rate to calculate the APR. A "business day" is any day that is not a weekend or federal holiday. The Rates and Fees Table shows which rates, if any, are variable rates. It also lists the margin for each variable rate and any minimum daily periodic rate and corresponding APR.

Two business days before the Closing Date shown on your billing statement, we see what the Prime Rate is. We then add the applicable margin to that Prime Rate to get the APR. The daily periodic rate is calculated as described above.

3

4

If our calculation results in a change to a daily periodic rate from the previous billing cycle because the Prime Rate has changed, the new rate will apply as of the first day of your billing cycle that ends in the calendar month in which we made the calculation. If the daily periodic rate increases, you will have to pay a higher periodic finance charge and may have to pay a higher minimum payment.

**Default Rates:**

Your APRs also may vary if you are in default under this agreement or any other agreement you have with us or any of our related companies for any of the following reasons:

*   We do not receive, for any payment that is owed on this account or any other account or loan with us, at least the minimum payment due by the date and time due.
*   You exceed your credit line on this account.
*   You fail to make a payment to another creditor when due.
*   You make a payment to us that is not honored by your bank.
*   To the extent allowed by law, if, at any time after your account is closed, we demand immediate payment of your outstanding balance and we do not receive payment within the time we specify.

If any of these events occurs, we may increase the APRs (including any promotional APR) on all balances up to a maximum of the default rate stated in the Rates and Fees Table. We may consider the following factors to determine your default rate: the length of time your account has been open; the existence, seriousness and timing of defaults on your account; other indications of your account usage and performance; information about your other relationships with us or any of our related companies; and information we obtain from consumer credit reports obtained from credit bureaus. The default rate will take effect as of the first day of the billing cycle in which the default occurs, and will apply to purchase balances from the previous billing cycle for which periodic finance charges have not been already billed.

If we decide not to increase your APR even though there is a default or if we do not increase your APR up to the maximum default rate stated in the Rates and Fees Table, we reserve our right to increase your APR in the event of any future default. We may in our discretion determine to charge reduced default rates or reinstate standard rates for all or selected balances on your account. We may also refer to this portion of the agreement as the Preferred Customer Pricing Eligibility section.

**Finance Charge Calculation—Two-Cycle Average Daily Balance Method (Including New Purchases) for Purchases and Average Daily Balance Method (Including New Transactions) for Other Transactions:**

We calculate periodic finance charges separately for each balance associated with a different category of transactions (for example, purchases, balance transfers, cash advance checks, balance transfer checks, cash advances, overdraft advances, and each promotion). These calculations may combine different categories with the same daily periodic rates. This is how it works:

We calculate the periodic finance charges for purchases in two steps, as follows:

*   First, for each day of the billing cycle, we multiply the daily balance by the daily periodic rate.
*   Second, for each day of the previous billing cycle we multiply the daily balance for purchases made in that billing cycle by the same daily periodic rate. However, we do not do this second step if we received payment in full of the New Balance on your previous billing statement by the date and time your previous billing statement by the date and time the minimum payment was due or if a periodic finance charge was already billed on that balance.

We calculate the periodic finance charges for purchases subject to a promotional rate the same way, but we use the promotional rate.

We calculate periodic finance charges for balance transfers, cash advance checks, balance transfer checks, cash advances, and overdraft advances by multiplying the daily balance for each of those categories by the daily periodic rate for each of those categories, each day. You have overdraft advances only if you have linked this account to a checking account with one of our related banks. We calculate the periodic finance charges for balance transfers, cash advance checks, balance transfer checks and cash advances subject to a promotional rate the same way, but we use the promotional rate.

To get the daily balance for each day for each category:

5

*   We take the beginning balance for that day.
*   We add to that balance any new transactions, fees, other charges, and debit adjustments that apply to that category. We add a new purchase, cash advance, balance transfer or overdraft advance to the daily balance as of the transaction date, or a later date of our choice. We add a new cash advance check or balance transfer check to the daily balance as of the data this cash advance check or balance transfer check is deposited by a payee, or a later date of our choice.
*   We subtract from that balance any payments, credits, or credit adjustments that apply to that category and that are credited as of that day.
*   We treat a credit balance as a balance of zero.

To get the beginning balance for each category for the next day, we add the daily periodic finance charge to the daily balance. If more than one daily periodic rate could apply to a category because the rate for the category may vary based on the amount of its average daily balance, we will use the daily periodic rate that applies for the average daily balance amount at the end of the billing cycle to calculate the daily periodic finance charge each day. This agreement provides for daily compounding of finance charges.

To get the total periodic finance charge for the billing cycle, we add all of the daily periodic finance charges for each category for each day during that billing cycle, plus the daily periodic finance charges on purchases, if any apply, for the previous billing cycle. However, if any periodic finance charge is due, we will charge you at least the minimum periodic finance charge stated in the Rates and Fees Table. If it is necessary to add an additional amount to reach the minimum finance charge, we add that amount to the balance for purchases made during the billing cycle.

The total finance charge on your account for a billing cycle will be the sum of the periodic finance charges plus any transaction fee finance charges.

For each category we calculate an average daily balance (including new transactions) for the billing cycle by adding all your daily balances and dividing that amount by the number of days in the billing cycle. If a periodic finance charge for purchases made during the previous billing cycle applies, the average daily balance for those purchases is calculated the same way. If you multiply the average daily balance for a category by that category's daily periodic rate, and multiply the result by the number of days in the billing cycle, the total will equal the periodic finance charges for that balance attributable to that billing cycle, except for minor variations due to rounding.

**Grace Period and Accrual of Finance Charges:**

We accrue periodic finance charges on a transaction, fee, or finance charge from the date it is added to your daily balance until payment in full is received on your account. However, we do not charge periodic finance charges on new purchases billed during a billing cycle if we receive payment of your New Balance by the date and time your minimum payment is due and we received payment of your New Balance on your previous billing statement by the date and time your payment was due. This exception or "grace period" only applies to purchases and does not apply to balance transfers, balance transfer checks, cash advances, cash advance checks or overdraft advances.

**Transaction Fees for Cash Advances:**

We may charge you a cash advance fee in the amount stated in the Rates and Fees Table for each of the following transactions:

*   cash advance checks;
*   cash advances.

In addition, if you use a third party service to make a payment on your behalf and the service charges the payment to this account, we may charge a transaction fee for the payment.

These transaction fees are finance charges. We add the fee to the balance for the related category as of the transaction date of the cash advance.

**Transaction Fees for Balance Transfers:**

We may charge you a transaction fee in the amount stated in the Rates and Fees Table for each of the following transactions:

*   balance transfer checks;
*   balance transfers.

These transaction fees are finance charges. We add the fee to the balance for the related category as of the transaction date of the balance transfer. For example, a transaction fee for a balance transfer would be added to your

6

balance transfer balance.

**5. OTHER FEES AND CHARGES**

We may charge the following fees. The amounts of these fees are listed in the Rates and Fees Table. These fees will be added to the balance for purchases made during the billing cycle.

**Annual Fee:**

If your account has an annual fee, it will be billed each year or in monthly installments (as stated in the Rates and Fees Table), whether or not you use your account, and you agree to pay it when billed. The annual fee is non-refundable unless you notify us that you wish to close your account within 30 days of the date we mail your billing statement on which the annual fee is charged and at the same time, you pay your outstanding balance in full. Your payment of the annual fee does not affect your right to close your account or limit your right to make transactions on your account. If your account is closed by you or us, we will continue to charge the annual fee until you pay your outstanding balance in full and terminate your account relationship.

**Late Fee:**

We may charge a late fee if we do not receive at least your required minimum payment by the date and time due as shown on your billing statement. We will calculate the late fee based on the Previous Balance shown on the billing statement on which the late fee appears. We may also refer to this fee as the late payment fee or charge.

**Overlimit Fee:**

If your account balance is over your credit line at any time during a billing cycle, even if only for a day, we may charge an overlimit fee. We may charge this fee even if your balance is over the credit line because of a finance charge or fee we imposed or a transaction we authorized. We will not charge more than one overlimit fee for any billing cycle. But we may charge an overlimit fee in subsequent billing cycles, even if no new transactions are made on your account, if your account balance still is over your credit line at any time during the subsequent billing cycles.

**Return Payment Fee:**

If (a) your payment check or similar instrument is not honored, (b) an automatic debit or other electronic payment is returned unpaid, or (c) we must return a payment check because it is not signed or cannot be processed, we may charge a return payment fee. We may also refer to this fee as the returned payment fee.

**Return Check Fee:**

If (a) we stop payment on a cash advance check or balance transfer check at your request, or (b) we refuse to pay a cash advance check or balance transfer check, we may charge a return check fee. We may also refer to this fee as the stop payment fee and the declined check fee.

**Administrative Fees:**

If you request a copy of a billing statement, sales draft or other record of your account or if you request two or more cards or any special services (for example, obtaining cards on an expedited basis), we may charge you for these services. We may also refer to these fees as the copy fee and the card replacement fee, respectively. In addition, if a Cardmember Service Representative initiates an electronic payment at your request, we may charge you a fee for this service. We may also refer to this fee as the expedited payment fee. However, we will not charge you for copies of billing statements, sales drafts or similar documents that you request for a billing dispute you may assert against us under applicable law. Other fees may apply for other services we provide that we will inform you about when we offer the service.

**6. DEFAULT/COLLECTION**

We may consider you to be in default if any of these occurs:

• We do not receive at least the minimum amount due by the date and time due as shown on your billing statement.

• You exceed your credit line.

• You fail to comply with the terms of this agreement or any agreement with one of our related companies.

7

ADV2039    10/04

• You file for bankruptcy.

• We obtain information that causes us to believe that you may be unwilling or unable to pay your debts to us or to others on time.

• You become incapacitated or in the event of your death.

If we consider your account to be in default, we may close your account without notice and require you to pay your unpaid balance immediately. We also may require you to pay interest at the rate of two percent (2%) a month on the unpaid balance when we deem your account to be six or more billing cycles past due.

To the extent permitted by law, if you are in default because you have failed to pay us, you will pay our collection costs, attorneys' fees, court costs, and all other expenses of enforcing our rights under this agreement.

**7. CLOSING YOUR ACCOUNT**

You may close your account at any time. If you call us to close your account, we may require that you confirm your request in writing.

We may close your account at any time or suspend your credit privileges at any time for any reason without prior notice except as required by applicable law. If we close your account, we will not be liable to you for any consequences resulting from closing your account or suspending your credit privileges.

If you or we close your account, you and any authorized users must immediately stop using your account and destroy all cards, checks or other means to access your account or return them to us upon request. You will continue to be responsible for charges to your account, even if they are made or processed after your account is closed and you will be required to pay the outstanding balance on your account according to the terms of this agreement. In addition, to the extent allowed by law, we may require you to pay the outstanding balance immediately and charge the default rate if we do not receive payment within the time we specify.

**8. ARBITRATION AGREEMENT**

PLEASE READ THIS AGREEMENT CAREFULLY. IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, YOU WILL NOT BE ABLE TO BRING A CLASS ACTION OR OTHER REPRESENTATIVE ACTION IN COURT SUCH AS THAT IN THE FORM OF A PRIVATE ATTORNEY GENERAL ACTION, NOR WILL YOU BE ABLE TO BRING ANY CLAIM IN ARBITRATION AS A CLASS ACTION OR OTHER REPRESENTATIVE ACTION. YOU WILL NOT BE ABLE TO BE PART OF ANY CLASS ACTION OR OTHER REPRESENTATIVE ACTION BROUGHT BY ANYONE ELSE, OR BE REPRESENTED IN A CLASS ACTION OR OTHER REPRESENTATIVE ACTION. IN THE ABSENCE OF THIS ARBITRATION AGREEMENT, YOU AND WE MAY OTHERWISE HAVE HAD A RIGHT OR OPPORTUNITY TO BRING CLAIMS IN A COURT, BEFORE A JUDGE OR JURY, AND/OR TO PARTICIPATE OR BE REPRESENTED IN A CASE FILED IN COURT BY OTHERS (INCLUDING CLASS ACTIONS AND OTHER REPRESENTATIVE ACTIONS). OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO A COURT, SUCH AS DISCOVERY OR THE RIGHT TO APPEAL THE DECISION MAY BE MORE LIMITED, EXCEPT AS OTHERWISE PROVIDED BELOW, THOSE RIGHTS ARE WAIVED.

Binding Arbitration: This Arbitration Agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by and be enforceable under the Federal Arbitration Act (the "FAA"), 9 U.S.C. §1-16 as it may be amended. This Arbitration Agreement sets forth the circumstances and procedures under which claims (as defined below) may be resolved by arbitration instead of being litigated in court.

Parties Covered: For the purposes of this Arbitration Agreement, "we" and "us" means Chase Manhattan Bank USA, N.A., its parent, subsidiaries, affiliates, licensees, predecessors, successors, assigns, any purchaser of your Account, and all of their officers, directors, employees, agents, and assigns or any and all of them. Additionally, "we" or "us" shall mean any third party providing benefits, services, or products in connection with the Account (including but not limited to credit bureaus, merchants that accept any credit device issued under the Account, rewards programs and enrollment services, credit insurance companies, debt collectors, and all of their officers,

8

directors, employees, agents and representatives) if, and only if, such a third party is named by you as a co-defendant in any Claim you assert against us.

**Claims Covered.** Either you or we may, without the other's consent, elect mandatory, binding arbitration of any claim, dispute or controversy by either you or us against the other, or against the employees, parents, subsidiaries, affiliates, beneficiaries, agents or assigns of the other, arising from or relating in any way to the Cardmember Agreement, any prior Cardmember Agreement, your credit card Account or the advertising, application or approval of your Account ("Claim"). This Arbitration Agreement governs all Claims, whether such Claims are based on law, statute, contract, regulation, ordinance, tort, common law, constitutional provision, or any legal theory of law such as respondent superior, or any other legal or equitable ground and whether such Claims seek as remedies money damages, penalties, injunctions, or declaratory or equitable relief. Claims subject to this Arbitration Agreement include Claims regarding the applicability of this Arbitration Agreement or the validity of the entire Cardmember Agreement or any prior Cardmember Agreement. This Arbitration Agreement includes Claims that arose in the past, or arise in the present or the future. As used in this Arbitration Agreement, the term Claim is to be given the broadest possible meaning.

Claims subject to arbitration include Claims that are made as counterclaims, cross claims, third party claims, interpleaders or otherwise, and a party who initiates a proceeding in court may elect arbitration with respect to any such Claims advanced in the lawsuit by any party or parties.

As an exception to this Arbitration Agreement, you retain the right to pursue in a small claims court any Claim that is within that court's jurisdiction and proceeds on an individual basis. If a party elects to arbitrate a Claim, the arbitration will be conducted as an individual action. Neither you nor we agree to any arbitration on a class or representative basis, and the arbitrator shall have no authority to proceed on such basis. This means that even if a class action lawsuit or other representative action, such as that in the form of a private attorney general action, is filed, any Claim between us that is related to that issue raised in such lawsuits will be subject to an individual arbitration claim if either you or we so elect.

No arbitration will be consolidated with any other arbitration proceeding without the consent of all parties. The only Claims that may be joined in an individual action under this Arbitration Agreement are (1) those brought by us against you and any co-applicant, joint cardmember, or authorized user of your Account, or your heirs or your trustee in bankruptcy or (2) those brought by you and any co-applicant, joint cardmember, or authorized user of your Account, or your heirs or your trustee in bankruptcy against us.

**Initiation of Arbitration.** The party filing a Claim in arbitration must choose one of the following three arbitration administrators: American Arbitration Association, JAMS/Endispute ("JAMS") or National Arbitration Forum. These administrators are independent from us. The administrator does not conduct the arbitration. Arbitration is conducted under the rules of the selected arbitration administrator by an impartial third party chosen in accordance with the rules of the selected arbitration administrator and as may be provided in this Arbitration Agreement. Any arbitration hearing that you attend shall be held at a place chosen by the arbitrator or arbitration administrator within the federal judicial district in which you reside at the time the Claim is filed, or at some other place to which you and we agree in writing. You may obtain copies of the current rules of each of the three arbitration administrators, information about arbitration and arbitration fees, and instructions for initiating arbitration by contacting the arbitration administrators.

**American Arbitration Association,** 335 Madison Avenue, Floor 10, New York, NY 10017-4605, Web site: www.adr.org, 800-778-7879

**JAMS,** 1920 Main Street, Suite 300, Irvine, CA 92610, Web site: www.jamsadr.com, 800-352-5267

**National Arbitration Forum,** P.O. Box 50191, Minneapolis, MN 55405, Web site: www.arbitration-forum.com, 800-474-2371

**Procedures and law applicable in arbitration.** A single, neutral arbitrator will resolve Claims. The arbitrator will either be a lawyer with at least ten years experience or a retired or former judge. The arbitration will be conducted under the applicable procedures and rules of the arbitration administrator that are in effect on the date the arbitration is filed unless those procedures and rules are inconsistent with this Arbitration

Agreement, in which case this Agreement will prevail. These procedures and rules may limit the amount of discovery available to you or us. The arbitrator will apply applicable substantive law consistent with the FAA and applicable statutes of limitations, and will honor claims of privilege recognized at law. You may choose to have a hearing and be represented by counsel. The arbitrator will take reasonable steps to protect customer Account Information and other confidential information, including the use of protective orders to prohibit disclosure outside the arbitration, if requested to do so by you or us. The arbitrator will have the power to award to a party any damages or other relief provided for under applicable law, and will not have the power to award relief to, against, or for the benefit of any person who is not a party to the proceeding. If the law authorizes such relief, the arbitrator may award punitive damages or attorney fees. The arbitrator will make any award in writing but need not provide a statement of reasons unless requested by a party. Upon a request by you or us, the arbitrator will provide a brief statement of the reasons for the award.

**Costs.** We will reimburse you for the initial arbitration filing fee paid by you up to the amount of $500 upon receipt of proof of payment. Additionally, if there is a hearing, we will pay any fees of the arbitrator and arbitration administrator for the first two days of that hearing. The payment of any such hearing fees by us will be made directly to the arbitration administrator selected by you or us pursuant to this Arbitration Agreement. All other fees will be allocated in keeping with the rules of the arbitration administrator and applicable law. However, we will advance or reimburse filing fees and other fees if the arbitration administrator or arbitrator determines there is good reason for requiring us to do so or you ask us and we determine there is good cause for doing so. Each party will bear the expense of the fees and costs of that party's attorneys, experts, witnesses, documents and other expenses, regardless of which party prevails, for arbitration and any appeal (as permitted below), except that the arbitrator shall apply any applicable law in determining whether a party should recover any or all fees and costs from another party.

**Enforcement, finality, appeals.** Failure or any delay in enforcing this Arbitration Agreement at any time, or in connection with any particular Claims, will not constitute a waiver of any rights to require arbitration at a later time or in connection with any other Claims. Any decision rendered in such arbitration proceeding will be final and binding on the parties, unless a party appeals in writing to the arbitration organization within 30 days of issuance of the award. The appeal must request a new arbitration before a panel of three neutral arbitrators designated by the same arbitration organization. The panel will reconsider all factual and legal issues anew, follow the same rules that apply to a proceeding using a single arbitrator, and make decisions based on the vote of the majority. Each party will bear their own fees, costs and expenses for any appeal, but a party may recover any or all fees, costs and expenses from another party, if the majority of the panel of arbitrators, applying applicable law, so determines. An award in arbitration will be enforceable as provided by the FAA or other applicable law by any court having jurisdiction.

**Severability, survival.** This Arbitration Agreement shall survive: (i) termination or changes in the Cardmember Agreement, the Account and the relationship between you and us concerning the Account, such as the issuing of a new account number or the transferring of the balance in the Account to another account; (ii) the bankruptcy of any party or any similar proceeding initiated by you, or on your behalf; and (iii) payment of the debt in full by you or by a third party. If any portion of this Arbitration Agreement is deemed invalid or unenforceable, the remaining portions shall nevertheless remain in force.

**9. CHANGES TO THIS AGREEMENT**

We can change this agreement at any time, regardless of whether you have access to your account, by adding, deleting, or modifying any provision. Our right to add, delete, or modify provisions includes financial terms, such as the APRs and fees, and other terms such as the nature, extent, and enforcement of the rights and obligations you or we may have relating to this agreement. Modifications, additions, or deletions are called "Changes" or a "Change".

We will notify you of any Change if required by applicable law. These Changes may be effective with notice only, at the time stated in our notice, in accordance with applicable law. Unless we state otherwise, any Change will apply to the unpaid balances on your account and to new transactions. The notice will describe any rights you may have with respect to any

Change, and the consequences if you do or do not exercise those rights. For example, the notice may state that you may notify us in writing by a specified date if you do not want to accept certain Changes we are making. If you notify us in writing that you do not accept the Changes, your account may be closed (if it is not already closed) and you will be obligated to pay your outstanding balance under the applicable terms of the agreement. If you do not notify us in writing by the date stated in the notice, or if you notify us but then use your account after the date stated in the notice, you will be deemed to accept all Changes in the notice and to accept and confirm all terms of your agreement and all Changes in prior notices we have sent you regardless of whether you have access to your account.

### 10. CREDIT INFORMATION

We may periodically review your credit history by obtaining information from credit bureaus and others.

We may report information about you and your account to credit bureaus, including your failure to pay us on time. If you request additional cards on your account for others, we may report account information in your name as well as in the names of those other people.

If you think we have reported inaccurate information to a credit bureau, you may write to us at the Cardmember Service address listed on your billing statement. Please include your name, address, account number, telephone number and a brief description of the problem. If available, please provide a copy of the credit bureau report in question. We will promptly investigate the matter and, if our investigation shows that you are right, we will contact each credit bureau to which we reported the information and will request they correct the report. If we disagree with you after our investigation, we will tell you in writing or by telephone. We will also notify the credit bureau that you dispute the information unless you let us know that you no longer dispute the information.

### 11. NOTICES/CHANGE OF PERSONAL INFORMATION

We will send cards, billing statements and other notices to you at the address shown in our files. Or, if this is a joint account, we can send billing statements and notices to any joint account holder. Notice to one of you will be considered notice to all of you and all of you will remain obligated on the account.

If you change your name, address, or home or business telephone number or email address (if you elect to receive billing statements or other notices on line), you must notify us immediately in writing at the address shown on the back of your billing statement. We may, at our option, accept mailing address corrections from the United States Postal Service.

### 12. TELEPHONE MONITORING AND RECORDING

We, and if applicable, our agents, may listen to and record your telephone calls with us. You agree that we, and if applicable, our agents, may do so, whether you or we initiate the telephone call.

### 13. ILLINOIS CARDMEMBERS: INFORMATION SHARING

Our Privacy Policy, which you have received, describes our information sharing practices and gives directions on how to opt out, or direct us to limit the sharing of personal information about you with companies or organizations outside of our family of companies. Illinois law provides that we may not share information about you with companies or other organizations outside of our family of companies unless you authorize the disclosure or, unless the disclosure falls under another exception in the law (such as sharing information to process your transactions or in response to a subpoena). You hereby agree that, if you choose not to exercise the opt out described in our Privacy Policy, you will be deemed to have authorized us to share personal information we about you (including information related to any of the products or services you may have with any of our companies) with companies or other organizations outside of our family of companies.

### 14. ENFORCING THIS AGREEMENT

We can delay enforcing or not enforce any of our rights under this agreement without losing our right to enforce them in the future. If any of the terms of this agreement are found to be unenforceable, all other terms will remain in full force.

### 15. ASSIGNMENT

We may assign your account, any amounts you owe us, or any of our rights and obligations under this agreement to a third party. The person to whom we make the assignment will be entitled to any of our rights that we assign to that person.

### 16. GOVERNING LAW

THE TERMS AND ENFORCEMENT OF THIS AGREEMENT AND YOUR ACCOUNT SHALL BE GOVERNED AND INTERPRETED IN ACCORDANCE WITH FEDERAL LAW AND, TO THE EXTENT STATE LAW APPLIES, THE LAW OF DELAWARE, WITHOUT REGARD TO CONFLICT-OF-LAW PRINCIPLES. THE LAW OF DELAWARE, WHERE WE AND YOUR ACCOUNT ARE LOCATED, WILL APPLY NO MATTER WHERE YOU LIVE OR USE THE ACCOUNT.

### 17. FOR INFORMATION

Please call the Cardmember Service telephone number on your card or billing statement if you have any questions about your account or this agreement.

### 18. YOUR BILLING RIGHTS

**Keep This Notice For Future Use**

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us In Case Of Errors Or Questions About Your Bill**

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at the Cardmember Service address shown on your billing statement. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

*   Your name and account number.
*   The dollar amount of the suspected error.
*   Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment your letter must reach us at least three business days before the automatic payment is scheduled to occur.

**Your Rights And Our Responsibilities After We Receive Your Written Notice**

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within 10 days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50.00 of the questioned amount, even if your bill was correct.

**Special Rules for Credit Card Purchases**

If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. This right does not apply to check transactions. There are two limitations on this right:

(a) You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and

(b) The purchase price must have been more than $50.00.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

Copyright © 2004 JPMorgan Chase & Co. All rights reserved.

ADV2039    10/04