1  KENNETH L. ANDREWS, SBN 175740
   DOAN LAW FIRM, LLP
2  2850 PIO PICO DRIVE, SUITE D
   CARLSBAD, CALIFORNIA 92008
3  (760) 450-3333 TELEPHONE
   ken@dllfirm.com
4
   ATTORNEYS FOR PLAINTIFF
5  Michael G. Doan

**NUNC PRO TUNC**

MAR 2 1 2008

FILED

08 MAR 24  AM 8: 31

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY:                    DEPUTY

6

7                UNITED STATES FEDERAL COURT

8              SOUTHERN DISTRICT OF CALIFORNIA

9                                          CASE NO.:   08 CV 0031 LAB BLM

10  Michael G. Doan,

11                                         **OPPOSITION TO MOTION TO**
                                           **COMPEL ARBITRATION**
12          Plaintiff,

13          v.

14  JPMorgan Chase Bank, Inc., and Does 1     Date   4/14/08

15  through 10 Inclusive,                     Time   11:15 am

16                                           Rm     9

17          Defendants.                      Judge  Larry Burns

18

19

20                        I. INTRODUCTION

21        This is case by Plaintiff against Defendant for violations of the California Rosenthal Act,

22  Civil Code §1788 et seq. ( "RFDCPA") and Fair Credit Reporting Act ("FCRA")(15 USC § 1681

23  et seq.), which prohibits debt collectors from engaging in abusive, deceptive, unfair practices, as

24  well as improper credit reporting.   Yet Defendant seeks to force these claims, not even remotely

25  related to its credit card account, out of the court system and into the "Defendant favorable"

26  world of arbitration.  Defendant seeks here to deny Plaintiff a trial by jury and other rights

27  expected of the United States legal system.

28        Of course, there are public policy reasons behind enforcing arbitration agreements and

1 there is a time and a place for such procedures.  However, this is not one of them -- for a number

2 of reasons.

3      First and foremost, here Defendant has failed to address a primary issue:  it has failed to

4 establish Plaintiff was a party to any such arbitration agreement.  There has been no agreement

5 signed by Plaintiff proffered into evidence with Defendant's motion.  Without such an agreement

6 whereby the parties agreed to arbitration, all the platitudes about public policy favoring

7 arbitration and the like are irrelevant to this motion.  Plaintiff thus asks the Court to acknowledge

8 this foundational and threshold issue and summarily deny this motion.

9      Furthermore, California law finds agreements such as the one proffered by Defendant to

10 be unenforceable as both procedurally unconscionable and substantively unconscionable.

11      For these reasons, and for the other reasons set forth herein, this motion should be denied.

12

13                              **II. SUMMARY OF ARGUMENT**

14

15      Defendant has not met its burden of proving a valid and existing enforceable arbitration

16 agreement as no agreement signed by Plaintiff has been proffered.   However, if the Court should

17 find that a valid agreement to arbitrate exists, then the Court should deny enforcement of the

18 arbitration agreement as both procedurally unconscionable and substantively unconscionable.

19 Lastly, California law clearly applies to this agreement,  not Delaware law as Defendant

20 contends, having failed to meet its burden on that issue.

21

22                                   **III. ARGUMENT**

23

24 **A.      THE FAA LOOKS TO STATE LAW TO DETERMINE WHETHER THERE IS A**

25 **VALID AGREEMENT TO ARBITRATE.**

26

27      Defendant contends that the Federal Arbitration Act, 9 U.S.C. Section 1 et. Seq. ("FAA")

28 compels arbitration here.  However, the FAA contemplates that this Court will consider, in the

1    first instance, whether the arbitration agreement is valid under California state law. While there is

2    a liberal federal policy favoring arbitration agreements, the Court must still look to state law to

3    address issues concerning the validity and enforceability of contracts. Ticknor v. Choice Hotels

4    International, Inc., (9th Cir. 2001) 265 F.3d 931,936-937; Ting V. AT&T, (9th Cir. 2003) 319

5    F.3d 1126, cert. denied, 124 S. Ct. 53.

6         The Court's role under the FAA is to determine (1) whether a valid agreement to arbitrate

7    exists and, if it does, (2) whether the agreement encompasses the dispute at issue. Chiron

8    Corporation v. Ortho Diagnostics Systems, Inc., (9th Cir. 2000) 207 F.3d 1126, 1130. The policy

9    issues favoring arbitration discussed in Defendant's brief do not apply without first finding a

10   valid agreement to arbitrate.

11        The FAA does not require this court to act as a rubber stamp and order arbitration without

12   first considering whether the arbitration clause is valid.  As the U.S. Supreme Court stated in

13   AT&T Technologies, Inc. v. Communications Workers of America (1986) 475 U.S. 643, 651,

14   "[i]t [is] for the court, not the arbitrator, to decide in the first instance whether the dispute [is]

15   to be resolved through arbitration."  Indeed, Section 2 of the FAA provides that an arbitration

16   agreement need not be enforced if "such grounds . . . exist at law or in equity for the revocation

17   of [the] contract." 9 U.S.C. Section 2.

18        It is clear the FAA does not preempt the state law at issue. Federal law may only preempt

19   state law in one of three ways: (1) express preemption, (2) field preemption, and (3) conflict

20   preemption. See Indus. Truck Ass'n. v. Henry, (9th  Cir. 1997) 125 F.3d 1305, 1309.

21        The Supreme Court has established that the "FAA contains no express preemptive

22   provision, nor does it reflect a congressional intent to occupy the entire field of arbitration."

23   Volt Info. Scis., Inc. v. Bd of Trs., (1989) 489 U.S. 468, 477. The Supreme Court has held that

24   "generally applicable contract defenses, such as fraud, duress, or unconscionability may be

25   applied to invalidate arbitration agreements without contravening Section 2 [of the FAA)."

26   Doctor's Assocs., Inc. v. Casarotto, (1996) 517 U.S. 681, 687 (emphasis added).

27        Furthermore, the courts have consistently held that California's law on unconscionability

28   is not preempted because it is generally applicable to contracts and consistent with the purposes

1    of the FAA. See, e.g., <u>Discover Bank v. Superior Court (Boehr)</u> (2005) 36 Cal.4th 148, 162-163;

2    <u>Ingle v. Circuit City Stores, Inc.</u>, (9th Cir. 2003) 328 F.3d 1165, 1170; <u>Ting v. AT&T</u>, supra,

3    319 F.3d at 1137.  Here the agreement is unconscionable because it forbids class-wide arbitration

4    and because it violates public policy.  Class-wide prohibitions in consumers' arbitration clauses

5    are presumably unconscionable. <u>Discover Bank v. Superior Court (Boehr)</u>, supra 36 Cal.4th 148,

6    162-163.

7

8    **B.    DEFENDANT HAS NO STANDING TO COMPEL ARBITRATION.**

9

10   **1.    It is Defendant's Initial Burden to Prove a Valid Arbitration Agreement Exists.**

11

12         Defendant agrees it is this Court's role to determine whether a valid agreement to arbitrate

13   exists. <u>Chiron Corp. v. Ortho Diagnostic Systems, Inc.</u>, 207 F.3d 1126, 1130 (9th Cir. 2000).

14   *"(A)rbitration is a matter of contract and a party cannot be required to submit to arbitration any*

15   *dispute which he has not agreed so to submit."* <u>United Steelworkers of America v. Warrior &</u>

16   <u>Gulf Navigation Co.</u> (1960) 363 U.S. 574, 582, 80 S.Ct. 1347, 1353.

17         Similarly, California's C.C.P. Section 1281.2 provides that a *"court shall order the*

18   *petitioner and the respondent to arbitrate the controversy if it determines that an agreement to*

19   *arbitrate the controversy exists, unless it determines that: (a) The right to compel arbitration has*

20   *been waived by the petitioner; or (b) Grounds exist for the revocation of the agreement. . . . "*

21   C.C.P. Section 1281.2 (emphasis added).  *"A proceeding to compel an arbitration agreement is*

22   *equivalent to an equitable action for specific performance of the contract."* <u>Freeman v. State</u>

23   <u>Farm Mut. Auto. Ins. Co.</u> (1975) 14 Cal.3d 473, 479.

24         Because the existence of an agreement is a statutory prerequisite to granting a petition to

25   compel arbitration, the Defendant here bears the burden of proving the existence of an agreement

26   by a preponderance of the evidence. <u>Rosenthal v. Great Western Financial Securities</u>

27   <u>Corporation</u> (1996) 14 Cal.4th 394, 413.  *"The determination of standing to arbitrate as a party*

28   *to the contractual arbitration agreement is a question of law for the trial court in the first*

1   *instance."* . City of Hope v. Bryan Cave (2002) 102 Cal.App.4th 1356, 1369.

2          Defendant still has the burden of establishing the existence of such a valid agreement that

3   it has standing to enforce.  This it has not done. Banner Entertainment, Inc. v. Superior Court,

4   (1998) 62 Cal.App.4th 348, 360-361 (denying arbitration where moving party did not meet its

5   burden of proving an agreement existed between the parties).  See also Paragian v. Libby Care

6   Center, (2002) 99 Cal.App.4th 298, 301-302 (same); Condee v. Longwood Management Corp.,

7   (2001) 88 Cal.App.4th 215, 218-219 (defendant must prove, as a preliminary matter, the

8   existence of such an agreement between the parties.)

9

10  **2.      Without An Agreement to Arbitrate, the Policies Favoring Arbitration Are Not**

11  **         Applicable.**

12

13         As the court summarized in Smith v. Microskills San Diego L.P., (2007) 153 Cal.App.4th

14  892, 896, giving up a right to a jury trial through an arbitration agreement is not to be taken

15  lightly and not before the existence of an arbitration agreement between the parties seeking

16  arbitration is proven.  The court in Smith, supra, 153 Cal.App.4th at  896. explained:

17

18         *"Although California has a strong policy favoring arbitration [citations], our courts also*

19         *recognize that the right to pursue claims in a judicial forum is a substantial right and one*

20         *not lightly to be deemed waived. [Citations.] Because the parties to an arbitration clause*

21         *surrender this substantial right, the general policy favoring arbitration cannot replace an*

22         *agreement to arbitrate. [Citations.] Thus, the right to compel arbitration depends upon*

23         *the contract between the parties, [citations], and a party can be compelled to submit a*

24         *dispute to arbitration only where he has agreed in writing to do so. [Citation.]" ( Marsch*

25         *v. Williams (1994) 23 Cal.App.4th 250, 254-255, 28 Cal.Rptr.2d 398.) Thus, as Smith*

26         *argues, in general a nonsignatory to an arbitration agreement, such as Microskills,*

27         *cannot enforce it. (See Van Luven v. Rooney Pace, Inc. (1987) 195 Cal.App.3d 1201,*

28         *1205, 241 Cal.Rptr. 248; Baker v. Birnbaum (1988) 202 Cal.App.3d 288, 291, 248*

1    *Cal.Rptr. 336.)*

2

3    Thus, because Defendant has utterly failed to begin to meet its burden to establish the

4    existence of any arbitration agreement signed by Plaintiff or between Plaintiff and Defendant, the

5    motion must be denied.

6

7    **3.    No Agreement Between Plaintiff and Defendant Has Been Proffered Into Evidence.**

8

9    Defendant has not offered into evidence any arbitration or other agreement signed by

10    Plaintiff, between Plaintiff and Defendant, or any other card issuer. If Defendant had such an

11    agreement, it seems that would have been provided to the Court with the motion. But it was not.

12    Defendant obviously does not have any such evidence - - there is no such "application" or other

13    agreement with Plaintiff's signature.

14    To convince this Court that a person has given up his right to a court and jury trial, and to

15    force him into an expensive arbitration proceeding that denies him of his rights, one would think

16    there would be an agreement containing that person's signature proffered into evidence. In fact,

17    in reading Defendant's memorandum of points and authorities, one is led to believe there truly is

18    no such signature to an agreement. Rather, Defendant claims an agreement arose since the

19    Plaintiff "used the Account."

20    In attempting to meet its burden of proof to establish such an agreement arising from "use

21    of the account," Defendant submitted the Declaration of Donna Barrett, Defendant's "General

22    Manager." The only indication that Plaintiff is somehow "associated," using that term loosely,

23    are several exhibits attached to the declaration.

24    Of the exhibits, Exhibit "C" is very concerning. It is alleged to be not a "sample copy" of

25    the actual billing statement like the sample copy in exhibit "A," but rather a copy of the actual

26    March 26, 2003 monthly billing statement. How could such a copy lack the Plaintiff's address,

27    account number, and balance?

28    More importantly, certainly a "name" generated by Defendant can't bind Plaintiff by

1  contract to anything.  Moreover, there is absolutely nothing related to Plaintiff on or near the any

2  of the other documents proffered by Defendant in the declaration.  Thus, the declaration and

3  attachments do not show the terms of any executed agreement by Plaintiff.

4         In summary, Defendant offers its "form" cardmember agreement, with its typical very fine

5  -- almost illegible -- print.  It also offers its "bill stuffer" and amendments claimed to have been

6  provided to all cardholders.   However, strangely missing from its proof is any agreement signed

7  by Plaintiff.  Moreover, there is no credible proof that the bill stuffer or amendments proffered in

8  exhibits were mailed to Plaintiff at any time, especially in light of the fact that this entire lawsuit

9  surrounds the failure of the Defendant to properly process mail.  And because it is Defendant's

10  burden of proof to establish the existence of an arbitration agreement in the first instance, failure

11  to do so disposes of this motion.

12

13  **4.      Defendant's Motion Should Be Denied Because Defendant Was Not a Party to Any**

14  **Arbitration Agreement.**

15

16         As there has been no agreement signed by Defendant proffered in evidence, Defendant

17  has no standing to enforce any of the exhibits.  A person or entity not a party to an arbitration

18  agreement cannot petition to enforce it.  As the court made clear in Lorber Industries of

19  California v. Los Angeles Printworks Corp., 803 F.2d 523 (9th Cir. 1986), *"Arbitration, however*

20  *favored by the courts and Congress, is a contractual right, and may not be invoked by one who is*

21  *not a party to the agreement and does not otherwise possess the right to compel arbitration."*

22  See also Britton v. Co-op Banking Group, 4 F.3d 742, 744 (9th Cir. 1993);  Van Luven v.

23  Rooney Pace, (1987) 195 Cal.App.3d 1201, 1205; Baker v. Birnbaum, (1988) 202 Cal.App.3d

24  288, 291.

25         In sum, Defendant has proffered no executed arbitration agreement.  Even more alarming,

26  is that Defendant has failed to proffer any evidence whatsoever that the Plaintiff executed any

27  document in connection with the account!

28

C.   **UNDER CALIFORNIA LAW, A CONTRACT OR CLAUSE IS UNENFORCEABLE IF IT IS BOTH PROCEDURALLY AND SUBSTANTIVELY UNCONSCIONABLE.**

1.   **UNCONSCIONABLE AGREEMENTS CAN BE SET ASIDE.**

If the Court finds a valid agreement and assignment, then it should still deny arbitration by finding the arbitration clause is "unconscionable" because it 1) prohibits class actions and 2) violates public policy.

The California Supreme Court has held that unconscionability is one ground for revocation under Section 1281.2. See Armendariz v. Found. Health Psychcare Servs., Inc., (2000) 24 Cal. 4th 83, 99-100. Significantly, the standard for revoking an arbitration agreement under Section 1281.2 is the same as under the FAA. See Armendariz v. Found. Health Psychcare Servs., Inc., supra, 24 Cal. 4th at 99-100.

In Armendariz, the Court held that the *"inquiry into the enforceability of the arbitration agreement . . . entails the same inquiry under the CAA as the FAA."* Id. at 99. Unconscionability has both a "procedural" and a "substantive" element, the former focusing on "oppression" or "surprise" due to unequal bargaining power, the latter on "overly harsh" or "one-sided" results. Id. at 114; Gutierrez v. Autowest, (2003) 114 Cal.App.4th 77, 87-89.

If a contract clause is found to be is unconscionable, Civil Code Section 1670.5 requires it to be unenforceable (unless severable). Id. at 87. The prevailing view is that procedural and substantive unconscionability must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability. Stirlen v. Super Cuts, Inc., (1997) 51 Cal.App.4th 1519, 1533.

In its recent en banc decision in Nagrampa v. Mailcoups, Inc., 469 F.3d 1257 (9th Cir. 2006), the Ninth Circuit drafted a blueprint for federal district courts addressing the question of compelling arbitration where the arbitration agreement is attacked as unconscionable.

Where the crux of the Complaint challenges the validity of the agreement containing the

1    arbitration provision, the question of unconscionability must be referred to the arbitrator. Id. at

2    1264. However, when the plaintiff does not attack the validity of the contract as a whole, a

3    federal court is to decide whether the arbitration provision is valid and enforceable under the

4    Federal Arbitration Act ("FAA") (9 U.S.C. § 2). Id. *"The federal courts cannot shirk their*

5    *statutory obligation to do so simply because controlling substantive state law requires the court*

6    *to consider, in the course of analyzing the validity of the arbitration provision, the circumstances*

7    *surrounding the making of the entire agreement."* Id.

8            Under California law, procedural unconscionability and substantive unconscionability

9    need not both be present to the same degree.

10

11            *"Essentially a sliding scale is invoked which disregards the regularity of the procedural*

12            *process of the contract formation in proportion to the greater harshness or*

13            *unreasonableness of the substantive terms themselves. In other words, the more*

14            *substantively oppressive the contract term, the less evidence of procedural*

15            *unconscionability is required to come to the conclusion that the term is unenforceable,*

16            *and vice versa."* Id.  See also *Armendariz v. Found. Health Psychcare Servs., Inc.,* supra,

17            24 Cal.4th at 114; *Ting v. AT&T,* supra, at 1149.

18

19            Thus, the greater the procedural unconscionability, the less evidence of substantive

20    unconscionability is required in order for the contract term to be unenforceable.

21

22    **2.        THE ARBITRATION AGREEMENT IS PROCEDURALLY**

23              **UNCONSCIONABLE.**

24

25            The procedural element focuses on "oppression" - the inequality of bargaining power

26    between the parties - or "surprise" - burying the contested clauses in a prolix printed form drafted

27    by another party. Id. .  *" 'Surprise' involves the extent to which the supposedly agreed-upon terms*

28    *of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the*

1  *disputed terms."* Patterson v. ITT Consumer Financial Corp. (1993) 14 Cal.App.4th 1659, 1664

2  quoting from A & M Produce Co. v. FMC Corp. (1982) 135 Cal.App.3d 473, 486.

3       The Plaintiff denies receipt of the arbitration agreement and execution of the same.

4  Moreover it is hard to imagine a form with smaller print and one that would be more difficult to

5  read than as attached to the Declaration.  Oppression is also present when an agreement includes

6  terms serving to limit the obligations of liability of the stronger party. Pardee Construction

7  Company v. Superior Court (2002) 100 Cal.App.4th 1081, 1091.

8       The unconscionability analysis begins with an inquiry into whether the contract is one of

9  adhesion.  Armendariz v. Found. Health Psychcare Servs., Inc., supra, 24 Cal.4th at 113. 7 An

10  adhesion contract is a standardized contract, which, imposed and drafted by the party of superior

11  bargaining strength, relegates to the subscribing party only an opportunity to adhere to the

12  contract or reject it. Little v. Auto Stiegler, Inc. (2003) 29 Cal.4th 1064, 1071. See also Flores v.

13  Transamerica Homefirst, Inc. (2001) 93 Cal. App.4th 846, 853 ("A finding of a contract of

14  adhesion is essentially a finding of procedural unconscionability"); Stirlen v. Super Cuts, Inc.,

15  supra, 51 Cal.App.4th at 1534 (a "take it or leave it" basis means procedurally unconscionable).

16       This agreement certainly without question satisfies procedural unconscionability

17  requirements.  Here Plaintiff couldn't negotiate the terms, even if he were provided them.  This is

18  plainly a contract of adhesion as Plaintiff was not even given the opportunity to decide to accept

19  it or reject it.  Plaintiff didn't even know there was an arbitration clause.   While Plaintiff disputes

20  ever executing any such agreement and Defendant can not substantiate the same, the fact that the

21  arbitration clause is printed in such fine print, and buried at the end of the agreement, is yet

22  further grounds for procedural unconscionability.  Patterson v. ITT Consumer Financial Corp.,

23  supra,  14 Cal.App.4th at 1664.

24       As Plaintiff had to "take it of leave it," and the contract could be "modified by Chase at

25  any time"  the contract presented on that basis is procedurally unconscionable. Aral v. Earthlink

26  (2005) 134 Cal.App.4th 544, 557 (*"The terms of the agreement were presented on a "take it or*

27  *leave it" basis either through installation of the software or through materials included in the*

28  *package mailed with the software with no opportunity to opt out. This is quintessential*

1   *procedural unconscionability"*); see also  Higgins v. Superior Court (2006) 140 Cal.App.4th

2   1238, 1252 (agreement found procedurally unconscionable when it was presented by a party with

3   superior bargaining power on a "take it or leave it" basis).

4         The same "take it or leave it" situation as in Aral is present here. Plaintiff had no

5   meaningful opportunity to negotiate the terms of the credit card agreement, including the

6   arbitration clauses.  It cannot be disputed those terms were not negotiable.  Defendant clearly had

7   superior bargaining strength, the terms were a "take it or leave it" proposition, Defendant could

8   modify the agreement unilaterally at any time, and the agreement appears to be a pre-printed

9   non-negotiated form with fine print.   Therefore, those forms and the related arbitration clauses

10   are plainly contracts of adhesion and procedural unconscionable.

11

12   **3.    THE ARBITRATION AGREEMENT IS  SUBSTANTIVELY**

13         **UNCONSCIONABLE.**

14

15         Substantive unconscionability analysis considers whether an arbitration provision is

16   overly harsh or generates one-sided results. The paramount issue is mutuality. Nagrampa at 1281.

17   *"California law requires an arbitration agreement to have a 'modicum of bilaterality,' and*

18   *arbitration provisions that are 'unfairly one-sided' are substantively unconscionable."* Id.

19         These one sided results and lack of mutualaity also arise from the ban on class-wide

20   participation (Discover Bank v.  Superior Court (Boehr) (2005) 36 Cal.4th 148), and violation of

21   public policy.  While courts have defined the substantive element in various ways, the analysis

22   traditionally *"focuses on whether the provision is overly harsh or one-sided and is shown if the*

23   *disputed provision of the contract falls outside the 'reasonable expectations' of the non-drafting*

24   *party or is 'unduly oppressive'".*  Gutierrez v. Autowest, supra, 114 Cal. App. 4th at 88.

25   Substantive unconscionability focuses on whether the terms of the agreement are oppressively

26   one-sided.  Id.

27

28

A.      **The Prohibition against Participation In a Class Action is Substantively
Unconscionable.**

The Court need look no further than the prohibition against class-wide arbitrations to find
this arbitration clause and contract are substantively unconscionable. Here the arbitration
agreement contains what the California Supreme Court has determined to be substantively
unconscionable terms: a waiver of class and representative actions. Discover Bank v. Superior
Court (Boehr) (2005) 36 Cal.4th 148, 163, put that issue to rest, at least as to consumer contracts
of adhesion in California. *"Agreements to arbitrate may not be used to 'harbor terms, conditions
and practices' that undermine public policy."* Id. at 166.  That Court found such class action
waiver clauses also to be substantively unconscionable *"inasmuch as they may operate effectively
as exculpatory contract clauses that are contrary to public policy"*. Id. at 161. Furthermore, class
action waiver clauses are unconscionable because they are "indisputably one-sided" because no
business would proceed against its customers via the class action vehicle.  Id.

The Ninth Circuit has held on several occasions that class action waivers in arbitration
clauses contained in contracts of adhesion are unconscionable. See Ingle v. Circuit City Stores,
Inc., 328 F.3d 1165, 1176 (9th Cir. 2003); Ting v. AT& T, 3I9 F.3d 1126, 1150 (9th Cir. 2003).
The California Supreme Court has also held that such class action waivers in consumer contracts
of adhesion are unconscionable.   Discover Bank v. Superior Court (Boehr) (2005) 36 Cal.4th
148. The Court stated at 162-163:

> *We do not hold that all class action waivers are necessarily unconscionable. But when*
> *the waiver is found in a consumer contract of adhesion in a setting in which disputes*
> *between the contracting parties predictably involve small amounts of damages, and when*
> *it is alleged that the party with the superior bargaining power has carried out a scheme*
> *to deliberately cheat large numbers of consumers out of individually small sums of*
> *money, then, at least to the extent the obligation at issue is governed by California law,*
> *the waiver becomes in practice the exemption of the party "from responsibility for [its]*

1      *own fraud, or willful injury to the person or property of another." (Civ.Code, § 1668.)*

2      *Under these circumstances, such waivers are unconscionable under California law and*

3      *should not be enforced.*

4

5           The arbitration clause Defendant seeks to enforce here is such a waiver and is therefore

6      not valid under California law.  This is a consumer contract provided to the cardmember in a

7      "take it or leave it" adhesion circumstance.

8           Thus, this is a class action waiver that is prohibited by <u>California law, Discover Bank v.</u>

9      <u>Superior Court (Boehr)</u> (2005) 36 Cal.4th 148.  Prohibiting class actions violates a long-standing

10     California public policy supporting such remedy to allow consumers to sue unscrupulous

11     businesses, even if the consumers each lost a relatively small amount. <u>Aral v. Earth Link </u>(2005)

12     134 Cal.App.4th 544, 564, quoting from <u>Vasquez v. Superior Court</u> (1971) 4 Cal.3d 800:

13

14          *Frequently numerous consumers are exposed to the same dubious practice by the same*

15          *seller so that proof of the prevalence of the practice as to one consumer would provide*

16          *proof for all. Individual actions by each of the defrauded consumers is often*

17          *impracticable because the amount of individual recovery would be insufficient to justify*

18          *bringing a separate action; thus an unscrupulous seller retains the benefits of its*

19          *wrongful conduct. A class action by consumers produces several salutary by-products,*

20          *including a therapeutic effect upon those sellers who indulge in fraudulent practices, aid*

21          *to legitimate business enterprises by curtailing illegitimate competition, and avoidance of*

22          *the judicial process of the burden of multiple litigation involving identical claims. The*

23          *benefit to the parties and the courts would, in many cases, be substantial.*

24

25          In <u>Szetela v. Discover Bank </u>(2002) 97 Cal.App.4th 1094, adopted in part by the

26     California Supreme Court in Discover Bank (Boehr), the court found that the "no class action

27     provision" was manifestly one-sided, and lacked bilaterality.  The Szetela court described the

28     unfairness of the prohibition as follows at 1101.1 :

1    *By imposing this clause on its customers, Discover has essentially granted itself a license*

2    *to push the boundaries of good business practices to their furthest limits, fully aware that*

3    *relatively few, if any, customers will seek legal remedies, and that any remedies obtained*

4    *will only pertain to that single customer without collateral estoppel effect. The potential*

5    *for millions of customers to be overcharged small amounts without an effective method of*

6    *redress cannot be ignored. Therefore, the provision violates fundamental notions of*

7    *fairness.*

8

9    *While the advantages to Discover are obvious, such a practice contradicts the California*

10    *Legislature's stated policy of discouraging unfair and unlawful business practices, and of*

11    *creating a mechanism for a representative to seek relief on behalf of the general public as*

12    *a private attorney general. (See, e.g., Bus. & Prof. Code, § 17200 et seq.) It provides the*

13    *customer with no benefit whatsoever; to the contrary, it seriously jeopardizes customers'*

14    *consumer rights by prohibiting any effective means of litigating Discover's business*

15    *practices. This is not only substantively unconscionable, it violates public policy by*

16    *granting Discover a "get out of jail free" card while compromising important consumer*

17    *rights.*

18

19    The Szetela court also held that the prohibition violated public policy by restricting the

20    ability to use the class action device to "promote judicial economy," which "benefits the court

21    system as a whole." Id. at 1101-02.

22    In Cohen v. DirecTV (2006) 142 Cal.App.4th 1442 the court again confirmed class action

23    prohibitions are unconscionable in the consumer context. There the consumer had signed, or had

24    thrust upon him, an arbitration clause in a bill stuffer. That was a "take it or leave it" situation

25    and found to be procedurally unconscionable. Id. at 1451. Because that consumer agreement

26    involved small amounts of damages and the party with the superior bargaining power was

27    carrying out a scheme involving a large number of consumers and small individual amounts of

28    money, the court found it met the Discover Bank requirements and held it was unconscionable.

1    Id. at 1452-1453.

2    The court commented on a number of other post-Discover Bank cases wherein the class

3    action waivers were found to be unconscionable, including Aral v. Earthlink, supra, 134

4    Cal.App.4th 544, Klussman v. Cross Country Bank, supra, 134 Cal.App.4th 1283 and

5    Independent Assn. of Mailbox Center Owners, Inc. v. Superior Court (2005) 133 Cal.App.4th

6    396.   The court summarized its holding by saying *"Because DirecTV's prohibition on class*

7    *claims in arbitration effectively operates to insulate DirecTV from liability for its conduct, the*

8    *class action waiver is unconscionable and unenforceable."* Id. at 1455.   This Court should rule

9    in the same manner.

10

11   **B.**    **The Prohibition Against Bringing An RFDCPA Claim To Court Is Substantively**

12          **Unconscionable Due To Violating Public Policy.**

13

14   Plaintiff has brought an action under the RFDCPA.   California Civil Code 1788.30

15   provides:

16       *(a) Any debt collector who violates this title with respect to any debtor shall be liable to*

17       *that debtor only in an **individual action**, and his liability therein to that debtor shall be in*

18       *an amount equal to the sum of any actual damages sustained by the debtor as a result of*

19       *the violation.*

20

21       *(b) Any debt collector who willfully and knowingly violates this title with respect to any*

22       *debtor shall, in addition to actual damages sustained by the debtor as a result of the*

23       *violation, also be liable to the debtor only in an **individual action**, and his additional*

24       *liability therein to that debtor shall be for a penalty in such amount as the **court** may*

25       *allow, which shall not be less than one hundred dollars ($100) nor greater than one*

26       *thousand dollars ($1,000).*

27

28       *(c) In the case of any action to enforce any liability under this title, the prevailing party*

1    *shall be entitled to costs of the action. Reasonable attorney's fees, which shall be based*

2    *on time necessarily expended to enforce the liability, shall be awarded to a prevailing*

3    *debtor; reasonable attorney's fees may be awarded to a prevailing creditor upon a*

4    *finding by the **court** that the debtor's prosecution or defense of the action was not in good*

5    *faith.*

6

7    *(f) Any action under this section may be brought in any appropriate **court of competent***

8    ***jurisdiction** in an individual capacity only, within one year from the date of the*

9    *occurrence of the violation.*

10

11    The forgoing clearly shows that, violations of the RFDCPA can only be maintained by

12  way of judicial actions.  Of greater importance, is California Civil Code 1788.33 which provides:

13

14    *Any waiver of the provisions of this title is contrary to public policy, and is void and*

15    *unenforceable.*

16

17    While the Defendant seeks to have Plaintiff's action to a jury trial waived, such an

18  attempt is not only contrary to public policy, but also void and unenforceable.  Moreover, the

19  Notes to California Civil Code 1788.33 provide additionally:

20

21    *SECTION 1. The Legislature finds and declares all of the following:*

22    *(a) This act is declaratory of existing law.*

23    *(b) This act may not be applied or construed to alter or diminish the principle expressed*

24    *in Section 3513 of the Civil Code that a law established for a public reason cannot be*

25    *contravened by a private agreement.*

26

27    California Civil Code 3513 as referenced above further provides:

28

1     *Anyone may waive the advantage of a law intended solely for his benefit. But a law*

2     *established for a public reason cannot be contravened by a private agreement.*

3

4        In no uncertain terms, the California Legislature has provided that actions under the

5 FRDCPA are to be held in a "court of competent jurisdiction." Moreover, this statute can not be

6 waived for arbitration, since to do so specifically violates "public policy."

7        While Defendant would allege that arbitration applies despite the forgoing, the underlying

8 purpose of the RFDCPA was to curb creditor abuses. One only needs to contemplate the

9 arbitration agreement technicalities to realize the absurdity of the arbitration provisions to any

10 related actions. For instance, Defendant could technically argue that if it murdered the Plaintiff

11 by putting a gun to his head in a dispute to pay the debt, the parties would still be bound to

12 arbitration! Such an argument clearly runs contrary to the intent of the statute and public policy.

13        Accordingly, the Plaintiff's entitlement to a jury trial can not be contravened by any

14 arbitration agreement. By law, such an arbitration agreement violates California Civil Code

15 3513, is void, unenforceable, and contrary to public policy. Thus, the arbitration provision is

16 substantively unconscionable.

17

18 **C.**     **The Unilateral Modification Provision Is Substantively Unconscionable.**

19

20        Clause 9 of the alleged cardmember agreement appears to allow CHASE to change the

21 terms of the account at anytime to any terms CHASE desires:

22

23     *We can change this agreement at any time, regardless of whether you have access to your*

24     *account, by adding, deleting, or modifying any provision. Our right to add, delete, or*

25     *modify provisions includes financial terms, such as APRs and fees, and other terms such*

26     *as the nature, extent, and enforcement of rights and obligations you or we may have*

27     *relating to this agreement.*

28

1        By granting itself the sole authority to amend the arbitration provision without notice,

2 compounded by the fact that this contract is adhesive in the first instance, the provision is

3 rendered substantively unconscionable.  Ingle, 328 F. 3d at 1179 (finding unilateral modification

4 power in adhesive contract, even when notice of modification is required, rendered arbitration

5 provision substantively unconscionable).

6

7 **D.**      **Substantive Unconscionability and Procedural Unconscionability Exists.**

8

9        In the proffered agreement, the cardmember is required to 1) give up their right to a judge

10 or a jury; 2) to arbitrate all types of claims made against the card issuer, whether such claims are

11 based on "law, statute, contract, regulation, ordinance, tort, common, law, constitutional

12 provision, or any legal theory of law," 3) waive his unwaivable FRDCPA right to a Jury Trial,

13 and 4) give up all class or multiple claims.

14        Accordingly, applying California's sliding scale test for unconscionability, this Court

15 should find that the evidence of procedural unconscionability is strong and so is the element of

16 substantive unconscionability. Taken together, the arbitration provision is clearly

17 unconscionable, and as a result, unenforceable under §2 of the FAA. Nagrampa, 469 F.3d at

18 1293; Ingle, 328 F.3d at 1180- 81; A & M Produce, 135 Cal.App.3d at 493 (*"When*

19 *nonnegotiable terms on preprinted form agreements combine with disparate bargaining power,*

20 *resulting in the allocation of commercial risks in a socially or economically unreasonable*

21 *manner, the concept of unconscionability ... furnishes legal justification for refusing enforcement*

22 *of the offensive result."*).

23

24

25

26

27

28

C.    **CALIFORNIA'S CHOICE OF LAW ANALYSIS COMPELS THE APPLICATION OF CALIFORNIA'S LAWS HERE.**

1.    **There is No Conflict of Laws Issue as Defendant Has Not Stated Which Nevada Law It Feels is in Conflict.**

Only if the Court has found 1) there is an agreement between the parties, and 2) Defendant has standing and 3) is an assignee of a valid assignment of the arbitration clause, need the Court then look at the choice of law argument. There are only really two points of contention here. The first issue is whether the choice of law affects whether Plaintiff can assert a defense of unconscionability and thereby avoid the arbitration clause. Second, the issue is whether the choice of law can prevent Plaintiff from joining with others in a class action against Defendant. If both states' laws would allow such relief, there is no conflict. As shown below, that is the case here. In short, based upon many years of California's choice of law analysis and rulings, it is clear that California law should apply.

In a half-hearted attempt, Defendant claims without benefit of authority that Delaware's laws should apply here because the agreement says so. However, Defendant has failed to meet its burden to establish there is even a conflict of laws between California and Nevada law. Furthermore, Defendant does not advise the Court as to which Delaware law should be applied, if there is such a conflict, or what the conflict is.

Furthermore, and quite telling, is Defendant's claim that an unconscionable contract cannot be held unenforceable under Delaware law is simply not true.

Thus, there is no Delaware law that should be used instead of California law in the procedure to determine whether the arbitration clause is unconscionable because California and Delaware law are the same on that issue.

1    **2.    Defendant Has the Burden Here to Invoke Another State's Laws, Which It Has Not**

2    **Met.**

3

4    This Court must evaluate California's law and Delaware's law to determine whether a true

5    conflict of interest exists. <u>Zinser v. AccuflX Resarch Inst., Inc.</u> (9th Cir. 2001) 253 F.3d 1180.

6    However, Defendant has the burden of persuasion in having this Court apply any other law than

7    California law, which it has not met. The burden is on the party seeking to invoke foreign law;

8    California applies "its own rule of decision unless a party litigant properly invokes the law of a

9    foreign state." <u>Hurtado v. Superior Court</u> (1974) 11 Cal.3d 574, 581. A party advocating

10   application of foreign law "must demonstrate that the [foreign] rule of decision will further the

11   interest of that foreign state and therefore that it is an appropriate one for the forum to apply to

12   the case before it." Id; see also <u>Liew v. Official Receiver and Liquidator</u>, 685 F.2d 1192, 1197

13   (9th Cir. 1982); <u>McGhee v. Arabian American Oil Co.</u>, 871 F.2d 1412, 1422 (9th Cir. 1989).

14   For some reason, however, Defendant does not argue the conflicts of laws issue but

15   instead only boldly proclaims Delaware's law applies because the arbitration agreement says it

16   does. That approach ignores Defendant's task of convincing this Court that Delaware has a more

17   compelling interest in applying its laws than does California. This Court must determine which

18   state has a more compelling interest in applying its laws in evaluating the unconscionability of

19   the arbitration clause, including its class action prohibition. However, Plaintiff submits this is

20   not a close call, as California's interest in having its law applied far outweighs Delaware's interest

21   under the governmental interest choice of law analysis.

22

23   **3.    California's Choice of Law Analysis Requires that California Law Applies Here.**

24

25   California follows the choice of law analysis set forth in <u>Nedlloyd Lines B.V. v. Superior</u>

26   <u>Court</u> (1992) 3 Cal.4th 459, 467, and summarized as follows:

27

28   *Briefly restated, the proper approach under Restatement section 187, subdivision (2) is*

1    *for the court first to determine either: (1) whether the chosen state has a substantial*

2    *relationship to the parties or their transaction, or (2) whether there is any other*

3    *reasonable basis for the parties' choice of law. If neither of these tests is met, that is the*

4    *end of the inquiry, and the court need not enforce the parties' choice of law. If, however,*

5    *either test is met, the court must next determine whether the chosen state's law is contrary*

6    *to a fundamental policy of California. If there is no such conflict, the court shall enforce*

7    *the parties' choice of law. If, however, there is a fundamental conflict with California*

8    *law, the court must then determine whether California has a 'materially greater interest*

9    *that the chosen state in the determination of the particular issue. . . .' (Rest., Section 187,*

10    *subd. (2).) If California has a materially greater interest than the chosen state, the*

11    *choice of law shall not be enforced, for the obvious reason that in such circumstance we*

12    *will decline to enforce a law contrary to this state's fundamental policy.*

14    As the court held in In re Pizza Time Theatre Securities Litigation, 112 F.R.D. 15, 19

15    (N.D. Cal. 1986), "'*California will decline to apply its own law to a case brought in California*

16    *only if it is shown that another state has a greater interest in having its own law applied*'

17    [quoting from] Nelson v. Tiffany Industries, Inc., 778 F.2d 533, 534 (9th Cir. 1985)."   "*The*

18    *conflict should be resolved by applying the law of the jurisdiction whose interest would be more*

19    *impaired if its law were not applied.*" Id., quoting from Liew v. Official Receiver and

20    Liquidator, 685 F.2d 1192, 1196 (9th Cir. 1982).

21    Thus, this Court need not follow the Delaware law if Delaware does not have a

22    substantial relationship to the parties or if there is no other reasonable basis for choosing

23    Delaware law.   Plaintiff submits Defendant has failed to meet its burden on that issue as it

24    cannot be determined from the moving papers what the relationship is between the parties and

25    Delaware law.  Certainly Plaintiff has no relationship with Delaware as he is a California resident

26    and obtained the credit card while living in California.

27    Furthermore, Restatement (Second) of Conflicts of Laws, Section 188 (3) states that if the

28    state of negotiating the contract and the place of performance are the same, "the local law of this

1  state will usually be applied", subject to exceptions not applicable here. Those relevant contacts

2  all compel California's law to be applied here: (1) The contract was entered into in California,

3  (2) the agreement was not "negotiated" anywhere, as it was an adhesion contract, but it certainly

4  was not negotiated in Delaware; (3) the agreement was performed in California, as the items

5  purchased on the Defendant's credit card were all purchased in California and Plaintiff paid the

6  bills in California; (4) the subject matter of the contract - the goods and services purchased on the

7  credit card - were all in California, and (5) Plaintiff has at all relevant times lived in California,

8  is a resident of California, and made all purchases in California.

9       Defendant may have done business elsewhere, but the relevant business here was

10  conducted in California, not in Delaware.  Thus, in evaluating the "relevant contacts" here, it is

11  not a close call, as California's contacts with the transactions at issue far outweigh Delaware's

12  contacts. In addition, California is the state of contracting and state of performance so under

13  Restatement (Second) of Conflicts of Laws, Section 188 (3), as well as under <u>Nedlloyd</u>, its law

14  should be applied.

15

16  **4.    California's Public Policy Favoring Class Actions is Paramount.**

17

18       Assuming arguendo the Court finds either Delaware has a substantial relationship to the

19  parties or there is some reasonable basis for choosing Delaware law, and the Court moves to the

20  next step of the <u>Nedlloyd</u> analysis, California's public policy favoring class actions compels the

21  application of California law.

22       It is clear that if Delaware law prohibits classwide arbitration - and there is no proof by

23  the moving party either way on that issue - then Delaware law would be contrary to a

24  fundamental policy of California and California law should apply.

25       California has a strong public policy against class waivers, especially in consumer

26  adhesion contracts, finding them per se unconscionable. <u>Discover Bank v. Superior Court</u>

27  <u>(Boehr)</u> (2005) 36 Cal.4th 148; <u>Szetela v. Discover Bank</u>, (2002) 97 Cal.App 4th 1094; <u>Aral v.</u>

28  <u>Earthlink</u> (2005) 134 Cal.App.4th 544. California's judicial policy has long favored class actions.

1  Richmond v. Dart Industries. Inc. (1981) 29 Cal.3d 462, 473 : ("[T)his state has a public policy

2  which encourages the use of the class action device"). California has a strong and long-standing

3  public policy in favor of class actions, especially in consumer matters. Vasquez v. Superior Court

4  (1971) 4 Cal.3d 800. As explained by the California Supreme Court in State of California v.

5  Levi Strauss & Co. (1986) 41 Cal.3d 460, 471:

6

7      *Since the pathbreaking case of Vasquez v. Superior Court (1971) 4 Cal.3d 800), the*

8      *California courts have recognized that the consumer class action is an essential tool for*

9      *the protection of consumers against exploitative business practices. The Vasquez decision*

10     *challenged the trial courts to develop 'pragmatic procedural devices' to 'simplify the*

11     *potentially complex litigation while at the same time protecting the rights of all parties.'*

12

13     California's public policy was also emphatically confirmed by the court in Klussman v.

14  Cross Country Bank (2005) 134 Cal.App.4th 1283. That case was about a Delaware choice of

15  law provision contained in the arbitration contract. The court found the contract to be

16  unconscionable, in part because of choice of law provisions. In rejecting application of Delaware

17  law, the court confirmed California's strong public policy against class actions waivers. *"The*

18  *clear conflict between the law of the two states [California and Delaware] requires an*

19  *evaluation of whether this conflict implicates a fundamental public policy in California. We*

20  *conclude that it does ..."* Id. at 1294.

21     In its decision, the Klussman court reviewed many California decisions discussing public

22  policies affected by arbitration contracts. Those include Discover Bank (Boehr), supra, 36

23  Cal.4th 148; Szetela v. Discover Bank, supra, 97 Cal.App.4th 1094; America Online, Inc. v.

24  Superior Court (2001) 90 Cat.App.4th 1; Independent Assn. of Mailbox Center Owners, Inc. v.

25  Superior Court (2005) 133 Cal.App.4th 396; and Vasquez v. Superior Court (1971) 4 Cal.3d 800.

26  The Klussman court held *"(t)he foregoing cases and the reasoning of the Discover Bank court*

27  *leave no doubt that Delaware's approval of class action waivers, especially in the context of a*

28  *'take it or leave it' arbitration clause is contrary to fundamental public policy in California."*

1  Klussman, supra, 134 Cal.App.4th at 1298.

2      Therefore, even if Defendant prevails on the other factors in the choice of law analysis, it

3  is certainly stopped cold with the fundamental public policy issue.   Defendants have not cited

4  one case to establish Delaware has any public policy and interest at all, let alone a more

5  substantial one than California, in allowing class-wide arbitration bans in consumer cases.

6  Perhaps that is because there is none, as the Delaware laws are not different than California's on

7  allowing class actions or class-wide arbitrations, as stated above. In short, California law should

8  apply here.

9

10                              **IV. CONCLUSION**

11

12      For the reasons stated herein, Plaintiff respectfully requests the court deny Defendant's

13  motion to compel arbitration and allow this matter to proceed before this Court.

14

15

16

17

18      Dated:   March 21, 2008            Respectfully submitted,

19                                         **DOAN LAW FIRM, LLP**

20

21                                         By: _____

22                                         KENNETH ANDREWS, Attorney for DOAN

23

24

25

26

27

28